PLAINTIFF'S OPPOSITION TO DEFENDANT EPSTEIN'S MOTION TO SET ASIDE ENTRY OF DEFAULT

24-cv-07439

Rapaport v. Epstein et al.

/s/ Gideon Rapaport *pro se*<br>
GideonRapaportLaw@outlook.com<br>
(862) 213-0895<br>
#627 1078 Summit Avenue<br>
Jersey City, New Jersey, 07307

## Table of Contents

Defendant Epstein's Counsel Were Informed of This Action via ECF Filing on October 31, 2024 and Received Advanced Notice of it's Imminent Filing on September 8 and 10, 2024........................1

Defendant Epstein's Counsel Attempt to Deceive the Court by Omission of Material Correspondence with Plaintiff that Gave Rise to the Sudden Abandonment of His Default Strategy to Avoid Discovery and Sidestep this Court on February 4, 2025..........................................2

Defendant Epstein's Claims of Having No Personal Knowledge of this Action and Related Circumstances Exceed Implausibility and Reach Absurdity................................................................2

The Complaint and Summons Were Properly Served..........................................................................3

Defendant Epstein Has Failed to Provide Any Good Cause for the Default to be Set Aside................5
Defendant Epstein's Default was a Willful and Strategic Choice Made to Avoid Discovery and Sidestep This Court............................................................................................................................

Setting Aside the Default Would Prejudice the Plaintiff.......................................................................6

Conclusion................................................................................................................................................6

**Defendant Epstein's Counsel Were Informed of This Action via ECF Filing on October 31, 2024 and Received Advanced Notice of it's Imminent Filing on September 8 and 10, 2024**

  Defendant Epstein's counsel in this matter, who first appeared for it on February 4, 2025, have also represented him in the closely related matter also before this Court of *Rapaport v. Iyer et al.*, 23-cv-06709 since June 12, 2024. In that capacity defendant Epstein's counselors Mr. Jeremy Chase and Ms. Nimra Azami were both served via ECF on October 31, 2024 with a brief referring to this action multiple times by it's caption and docket number of *Rapaport v. Epstein et al.*, 24-cv-07439. *See Rapaport v. Iyer et al.*, 23-cv-06709 *Docket No.* 90 at 6 and 10[1]. That filing also described the allegations contained within this action. Now they claim to have never known of this action's existence until February 3, 2025 *ECF No.* 37. Attorneys and parties who participate in ECF are deemed to have received and been served all documents sent via ECF per FRCP Rule 5(b)(2)(E). Mr. Jeremy Chase claims a stunning degree of ignorance despite notice via ECF, service of process, entry of a default and the passage of almost five months, while at the same time, Mr. Brian Field, representing defendants Iyer and Garrett knew of the second action and its contents, despite it not yet being served, just a few weeks after filing.

  Furthermore, in the context of the dispute over the plaintiff's seeking leave to amend in *Rapaport v. Iyer et al.*, the plaintiff represented to the Court on September 8 and 10, 2024 that he would not have sufficient time for a motion seeking leave to amend his pleading to include additional claims to be fully briefed by all parties because this would cause the statute of limitations to run on those claims later that month. *Rapaport v. Iyer et al. Docket Nos.* 60 and 62. The plaintiff also represented to the Court that the defendants were introducing needless procedural complexities by compelling him to imminently file another case with those claims, which he did on September 27, 2024, resulting in this action. Defendant Epstein's counsel engaged with these arguments and succeeded to obtain the result which the plaintiff had already declared would cause his filing of this subsequent and related case.

  Defendant Epstein's counsel are no strangers to disappearing and reappearing when they may obtain a procedural advantage according to their convenience. In the related matter of *Rapaport v. Iyer et al.*, after receiving notice of the plaintiff's former counsel's intent to amend, Mr. Jeremy Chase, joined by Mr. Brian Field on behalf of defendants Iyer and Garrett, failed to respond and remained out of communication for a period of at least 13 days, only to spring upon the plaintiff's former counsel a last minute ambush *Rapaport v. Iyer et al.* Docket No. 56. Incredibly, they also represented to the Court that any amendment, addition of a new party or claims would be "futile" despite not even knowing what those amendments, new parties or new claims would be. Now they want to be rewarded for purporting to not read documents served upon them via ECF four months ago referencing this action by caption, docket number and contents.

---

1   Page numbers at bottom of page, not blue text numbers

### Defendant Epstein's Counsel Attempt to Deceive the Court by Omission of Material Correspondence with Plaintiff that Gave Rise to the Sudden Abandonment of His Default Strategy to Avoid Discovery and Sidestep this Court on February 4, 2025

Defendant Epstein's counsel have attempted to deceive the Court by failing to disclose, and completely ignoring in their briefing their correspondence with the plaintiff, which was the deciding factor in defendant Epstein's choice to change his strategy last-minute and attempt to enter these proceedings by having the default set aside. Defendant Epstein wants to have his cake and eat it too, because it did not turn out quite to his liking as a result of containing a possibility of discovery.

On February 3, 2025, the plaintiff emailed Mr. Jeremy Chase, counsel for defendant Epstein, and inquired of him whether he was still representing defendant Epstein in the matter of *Rapaport v. Iyer et al.*, 23-cv-06709. Later that day, Mr. Jeremy Chase responded that he was still representing defendant Epstein in "that" matter, indicating a knowledge of, and contrast to other matters. *See* Exhibit 1.

On February 4, 2025, the plaintiff thanked Mr. Jeremy Chase by email for confirming that he was still representing defendant Epstein in the first case, and noted that he had asked because he found it odd that defendant Epstein would default in the second case if he was being represented in the first.

Later that day, Mr. Jeremy Chase emailed the plaintiff, and followed with a correction following an omission, both shown in Exhibit 1. There, he claimed that he had first learned of this action against defendant Epstein because Mr. Brian Field had called him the night before (coincidentally he claims) after when both the plaintiff had written to him and he had responded. He also claimed that he was just about to write to the plaintiff about this matter (at 3:21PM, not even morning).

In defendant Epstein's submission, none of this is mentioned or referenced, except for the detail that there was a call between Mr. Jeremy Chase and Mr. Brian Field, though in the motion (unlike the email) it does not say who initiated the call.

If it is in fact true that Mr. Brian Field called Mr. Jeremy Chase to discuss defendant Epstein's default the evening of February 3, and this was the first time the two ever discussed this action, there must have been a reason to spur this discussion of a case that had been filed almost five months earlier, and 17 days after default, for the first time. The best explanation for both the call occurring on that night, and defendant Epstein's rolling back of his willful default strategy can be simply explained by the plaintiff's motion for expedited discovery to accurately and conclusively determine the measure of damages with respect to defendant Epstein filed on January 29, 2025. The possibility that discovery as to damages would be permitted with respect to the measure of the damages that defendant Epstein has admitted liability to by default then defendant Epstein would not achieve the aims of his willful and strategic default of sidestepping this Court and evading discovery that is further discussed *infra*.

### Defendant Epstein's Claims of Having No Personal Knowledge of this Action and Related Circumstances Exceed Implausibility and Reach Absurdity

Defendant Epstein claims that he did not have personal knowledge of this action at any point until his counsel informed him of it on February 3, 2025. This claim is breathtakingly implausible, and stands in extreme contrast to defendant Epstein's prior attacks on the plaintiff's pleadings where he went so far in concocting implausibility that he attempted to manufacture it even in relation to actions he had already admitted to in writing *See Rapaport v. Iyer et al. Docket No.* 38 at ¶ 84. In fact, defendant Epstein's claims rise to the level of absurdity, and fit well with his broader pattern of

deception such as by omitting material facts from discussion as discussed *supra* and rejecting the basic norms of service in the Southern District of New York as discussed *infra*.

In order to believe that defendant Epstein had no knowledge of this action, one must accept a long list of absurdities and at least one outright falsehood. The outright falsehood, is his lie by omission that his counsel, specifically Mr. Jeremy Chase and Ms. Nimra Azami did not receive via ECF documents referencing this action multiple times by caption, docket number and contents, and multiple filings noticing the imminent filing of this action. They did, as discussed *supra*. Now for the absurdities.

Defendant Epstein is the perfect example of a sophisticated party. He is a graduate of the Yale Law School, Oxford and has taught law at elite schools for decades. He is also among the most prolific legal academics in the United States as well as a top placer for prestigious federal clerkships, including at the Supreme Court of the United States.

He now expects this Court to accept, that despite retaining extraordinarily expensive legal talent to represent him in a related matter before the same Court, having five of his former students (three of which are co-defendants in the related case) be part of this action, teaching law and coming into contact with dozens if not hundreds of students at New York University, the University of Chicago and dozens of other professors, attending the Federalist Society's National Lawyer's Convention (where he is well known) at the same time as the plaintiff where he spoke at both a panel and a plenary address lauding the tenure of former president Eugene Meyer, citation by Reason Magazine as being involved in choosing the next President of the Federalist Society, possessing a vast network of colleagues, associates and former students, that nobody ever told him or discussed with him his status as a defendant accused of racketeering and anti-trust violations with respect to his affiliations with many of these same people and organizations (See *Complaint* Appendix 1 Diagram).

All other defendants, including those who were served by substituted service like defendant Epstein, nail-and-mail, or could not be reached for service at all and instead waived service, obtained notice of this action and appeared to defend themselves. Defendant Epstein is the exception.

The Court is expected by defendant Epstein to believe, that at no point until February 3, 2025, coincidentally the same day that the plaintiff mentioned this case in a direct email to Mr. Jeremy Chase, did any of the other defendants reach out to or discuss this matter with defendant Epstein or his counsel, even ones who appeared months ago in this action. Conveniently, defendant Epstein also represents that he was ill during precisely all of the three weeks after December 27, 2024, for entirety of the time that the rules allowed him to respond.

Following defendant Epstein's default, even the media contacted the plaintiff, yet somehow defendant Epstein and his attorneys are supposed to be the only people in a very wide circle consisting of hundreds at least if not thousands of people, who were not aware of this action or that a default was entered against him.

Furthermore, defendant Epstein's contentions relating to his lack of knowledge must be viewed in light of the correct and far more reasonable (and actually plausible) explanation that defendant Epstein engaged in a willful and strategic default to avoid discovery and sidestep this Court. The timing of defendant Epstein's sudden appearance in relation to the plaintiff's questioning of his counsel alongside a pending motion for expedited discovery deprived him of any benefit of that strategy, and he decided to change course. Defendant Epstein's strategy is further explained *infra*.

## The Complaint and Summons Were Properly Served

Defendant Epstein was properly served according to FRCP Rule 4(e)(1), which allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made". Service was properly effectuated according to NY CPLR 308(2), which provides that service may be effectuated by "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential"…"

Defendant Epstein's contentions that the receptionist at NYU Law did not accept the papers are factually false per the affidavit and also legally irrelevant. The affidavit ECF No. 31 states that the receptionist "tried" to refuse service, which clearly means that she did not succeed in refusing. Furthermore as a matter of law, NY CPLR 308(2) only requires "delivering", which only requires that the papers reach the person and be left with them, which they did and were. It is quite telling that defendant Epstein does not cite any authority or even refer to actual language of NY CPLR 308(2) while attempting to fabricate issues with the service. If persons could refuse service in the manner that defendant Epstein erroneously suggests, every defendant or person could simply tell the process server "I refuse to accept service" and no case would ever be able to properly commence by personal service upon the defendant.

Defendant Epstein makes a couple of strange errors in his representation of the service made upon him. First, he refers to the person who received the process as "presumably a security guard" when the affidavit clearly states "receptionist". He also claims that the plaintiff "purported" to mail the papers to defendant Epstein. The papers were mailed as required by NY CPLR 308(2), but they were mailed by the process server as indicated on the affidavit of service and not by the plaintiff himself.

Another strange aspect of defendant Epstein's memorandum, is that he apparently did not realize that *ECF No.* 30 and 31 refer to the same service of process, and both are listed to take place December 27th, 2025 at 2:43PM. The second document is a corrected proof reflecting the same service of process at the same address, but with the "other" box checked to explain that service was effectuated in the manner allowed by NY CPLR 308(2) which is substantially similar to federal substituted service except that it is also permissible at a place of work as opposed to just an abode. The process server was apparently confused by the text in the second box of the federal form containing exactly the same method of service but for the mention of a place of business. It cannot be disputed that 40 Washington Square S, New York, NY 10012 is the address of NYU Law and defendant Epstein himself lists it on his California bar registration as his place of business.

Defendant Epstein also contends that the docket entry relating to service is "wrong" by stating that a receptionist at NYU Law "accepted" service. The format of the filing entry is preset by court staff, and it is unclear how such a quibbling over terminology could supersede Rule 4(e)(1), which allows for service as effectuated in this matter, would make any different to the outcome that defendant Epstein was properly served and did not respond to this action for his willful and strategic reasons.

## Defendant Epstein Has Failed to Provide Any Good Cause for the Default to be Set Aside

Defendant Epstein's reasons are unsupported, entirely conclusory, not even accompanied by an affidavit, and cast baseless aspersions about the sworn affidavit of a professional process server. For

reasons described *supra*, defendant Epstein's contentions as to lack of knowledge surpass implausibility so as to reach absurdity. The suspicious timing of defendant Epstein's sudden appearance in this case, calculated to avoid discovery must be considered, and was on doubt on the mind of Mr. Field as well when he supposedly discussed this case with defendant Epstein's counsel for the first time on February 3, 2025, while a motion for expedited discovery was pending.

The fact that defendant Epstein may not have actually received the papers, as he claims without providing an affidavit, is of no legal consequence because service was properly effectuated and is not the fault of the plaintiff. In *Robinson v. Bantam Books Incorporated*, 49 F.R.D. at 141-142 (SDNY 1970) the Court found that properly served defendants who did not actually receive the papers but which did not succeed in proving by evidence and affidavits for some good reason for why they were unable to receive the papers after being properly served and respond in time. That court stated:

> "Counsel is asking this court, in effect, to establish the proposition that the inter-office confusion resulting from multi-office corporate enterprises, plus the added confusion resulting from inter-corporate agreements, should automatically excuse failure to meet the time requirements of the Federal Rules of Civil Procedure. The court holds that there is little or no merit to defendants' attempt to make the rules read: defendants shall have 20 days from the time the summons and complaint filters back to the lawyer in charge of litigation for the district in which the case is filed. *** The fact that, before the 20 day deadline expired, no person in any of the offices through which this summons and complaint passed was willing to take responsibility for the timely filing of the answer is not to be condoned."

This is particularly pertinent because defendant Epstein is a law professor and a law school is his place of business. A complaint and summons should be properly handled in such a place. In any event, no amount of good cause is possible, nor should it be accepted by a court even if it were possible, when a default is willful and strategic as this one is, being calculated to achieve avoidance of discovery while sidestepping a District Court. In *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971), the Second Circuit stated, with respect to a defendant that elected to default:

> "We are instructed by *Wooster* that so long as the facts as painted by the complaint "might * * * have been the case" they may not now be successfully controverted by Toolco. There was a time for that and Toolco cannot elect to default and then defend on the merits. It cannot have its cake and eat it too."

Defendant Epstein has also not demonstrated any possibility of a meritorious defense whatsoever and has instead rather simply mentioned that according to the investigation of his counsel (the same counsel who claims to have been unaware of this case being filed for almost five months) investigated the matter and declared in an entirely conclusory fashion that he has a full and complete defense to all claims. This investigation by counsel must have been conducted, if defendant's counsel truly was ignorant of this case, some time between the evening of February 3, and the afternoon of February 4.

### Defendant Epstein's Default was a Willful and Strategic Choice Made to Avoid Discovery and Sidestep This Court

Defendant Epstein engaged in his strategy of willfully defaulting in this action because he believed that he could avoid discovery and sidestep this Court in a manner that is devious, deliberate and in bad-faith.

The plaintiff suspects, upon information and belief, that defendant Epstein coordinated with and assisted defendant Pallaki, who is separately represented from the other four student defendants, in obtaining his representation. This was undertaken as a part of defendant Epstein's default strategy with the understanding that defendant Pallaki would raise defenses that if accepted on a motion to dismiss or summary judgment would be sufficiently similar to defendant Epstein's available defenses so as to protect him from his own default, and give him another bite at the apple in addition to challenging the sufficiency of the forthcoming final default judgment on appeal, without actually having to appear before this Court. Effectively defendant Epstein would be able to raise defenses that will benefit him through defendant Pallaki without actually appearing.

Besides avoiding discovery, defendant Epstein also hoped that a final judgment entered against him, assuming the plaintiff would not request discovery with respect to the measure of damages (which he did), would allow him to appeal his final default judgment to the Second Circuit before any discovery would have taken place in this Court, such as for example if discovery were stayed pending motions to dismiss. In so doing defendant Epstein would skip any proceedings before this Court and significantly accelerate a victory he may hope for on a purely legal theory at the Second Circuit while depriving the plaintiff of the opportunity to amend his pleading with respect to his response.

### Setting Aside the Default Would Prejudice the Plaintiff

Setting aside the default would prejudice the plaintiff by adding significant delay to these proceedings. This action was filed on September 27, 2024, and delay as defendant Epstein proposes would increase the expected time for an answer to more than six months after the filing of this case, whose claims were originally hoped by the plaintiff to be part of an amended complaint to have been filed on September 27, 2024.

Defendant Epstein must not be rewarded for his attempt to abuse the procedures of this Court while colluding with other litigants to get multiple bites at the apple and a free fast-track to avoid discovery while sidestepping Your Honor.

### Conclusion

Defendant Epstein's motion to set aside the entry of default and vacate plaintiff's motion for discovery pertaining to damages should denied.

/s/ Gideon Rapaport pro se
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307