UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

                    Plaintiff,

        -against-                                          Case No.: 1:24-cv-07439 (JGLC)

RICHARD ALLEN EPSTEIN, et al.,

                    Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS AJAY IYER, ZACHARY GARRETT,
WILLIAM WEINBERG, AND ANDREW NELMS'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 2

ARGUMENT ..................................................................................................... 3

    I.     The Civil RICO Claims Fail. ................................................................. 4

         A.     Rapaport fails to allege a substantive RICO claim. ......................... 4

              1.     The Student Chapter is not an enterprise. ............................... 5

              2.     Rapaport fails to allege sufficient predicate acts. ................. 6

              3.     Rapaport fails to allege a pattern of racketeering activity. ................. 11

         B.     Rapaport's alleged injuries do not support a RICO claim. ............................ 13

         C.     Rapaport has not properly alleged causation. .................................. 14

    II.     The Monopoly Claims Fail. ................................................................. 16

         A.     Rapaport fails to allege actual or attempted monopoly power. ..................... 17

         B.     Rapaport fails to allege anticompetitive conduct in the relevant market. ........ 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 3

*Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) ........................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 3

*Brown Shoe Co. v. United States,* 370 U.S. 294 (1962) ................................................ 19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........................... 19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)........................ 11

*D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663 (2d Cir. 2014) ................................. 6

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) ................................................... 13

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174 (2d Cir. 1990) ............................... 18

*Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,*
    612 F. Supp. 2d 330 (S.D.N.Y. 2009) ..................................................................... 18

*FCC v. Am. Broad. Co.*, 347 U.S. 284 (1954) .............................................................. 13

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159 (2d Cir. 2004) ............. 4, 5, 11, 12

*Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603 (2d Cir. 2019)...................................... 12

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)........................................................ 11, 12, 13

*Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) .................................... 13, 14, 15

*In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380 (S.D.N.Y. 2019) ................... 19

*Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241 (2d Cir. 1992)............................ 16

*Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014)........................................................ 13, 14

*Kim v. Chang Hoon Lee & Champ, Inc.,* 196 F. App'x 14 (2d Cir. 2006)........................ 8, 13, 14

*Kimm v. Lee*, No. 04-cv-5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005)............ 8, 9, 10, 11

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) .............................................. 15

*Lynch v. Amoruso*, 232 F. Supp. 3d 460 (S.D.N.Y. 2017)............................................... 6

*M'Baye v. N.J. Sports Prod., Inc.,* No. 06-cv-3439-DC, 2007 WL 431881
(S.D.N.Y. Feb. 7, 2007) ........................................................................................ 4

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) .......................................... 3

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992) .............................................. 11

*McNally v. United States,* 483 U.S. 350 (1987)........................................................... 9

*Miller v. Carpinello*, No. 06-cv-12940(LAP), 2007 WL 4207282
(S.D.N.Y. Nov. 20, 2007) ...................................................................................... 7

*Miller v. Nicholas*, No. 20-cv-5230(WFK)(SJB), 2021 WL 9037639
(E.D.N.Y. Nov. 3, 2021) ........................................................................................ 19

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union,*
215 F.3d 923 (9th Cir. 2000) ................................................................................. 8

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ........................................ 15

*Nygård v. Bacon*, No. 19-cv-1559(LGS), 2021 WL 3721347
(S.D.N.Y. Aug. 20, 2021) ...................................................................................... 14

*O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704 (2d Cir. 1990)........................... 7, 10

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002).............................. 17, 18

*Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-cv-1861, 2021 WL 960394
(E.D.N.Y. Mar. 15, 2021) ...................................................................................... 14

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
30 F.3d 339 (2d Cir. 1994) .................................................................................... 5

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95 (2d Cir. 2021) .................................................. 3, 5

*Schlaifer Nance & Co. v. Est. of Andy Warhol,* 119 F.3d 91 (2d Cir. 1997).............. 11

*Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189
(W.D.N.Y. Jan. 28, 2014) ...................................................................................... 6

*Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447 (1993) .................................. 17, 18

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) .......... 11, 12

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)............................ 4

*Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90 (2d Cir. 1998) ........................... 17

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund
v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ............................................ 6

*United States v. Autuori,* 212 F.3d 105 (2d Cir. 2000) ................................... 9, 11

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) .............................. 7

*United States v. Ferrara*, 701 F. Supp. 39 (E.D.N.Y. 1988) ........................ 10

*United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008) .................................. 7

*V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
909 F. Supp. 162 (S.D.N.Y. 1995) .............................................................. 18

*Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) ................... 14

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ........................................................ 10

**Statutes**

18 U.S.C. § 1343 ............................................................................................ 9

18 U.S.C. § 1503 ............................................................................................ 7

18 U.S.C. § 1511 ............................................................................................ 8

18 U.S.C. § 1512 ............................................................................................ 7

18 U.S.C. § 1951 ............................................................................................ 10

18 U.S.C. § 1961 ..................................................................................... *passim*

18 U.S.C. § 1962 ..................................................................................... *passim*

18 U.S.C. § 1964 ............................................................................................ 9

**Rules**

Fed. R. Civ. P. 9 ......................................................................................... 3, 9

Fed. R. Civ. P. 12 ........................................................................................ 4

**INTRODUCTION**

Plaintiff Gideon Rapaport has recently taken to the judicial system to air his grievances about perceived years-old slights from his time as a student at New York University School of Law ("NYU Law"). In an earlier action currently pending before this Court, Rapaport claimed that two of his former classmates and Professor Richard Epstein defamed him in connection with the circumstances surrounding Rapaport's no longer working at Kirkland & Ellis. *See* Compl. ¶¶ 6–8, *Rapaport v. Iyer*, No. 23-cv-6709 (JGLC) (S.D.N.Y.), ECF No. 1. In that action, Rapaport also claimed that these individuals were the reason Rapaport failed to get the judicial clerkship he thought he deserved.

While Rapaport's claims in that action are currently subject to a fully briefed motion to dismiss, Rapaport returns to those same facts to now claim that several former classmates and Professor Epstein were involved in a far-fetched "'Organized Law' Racket." *See* Compl., Appendix A (ECF No. 1). And, again, this racket allegedly prevented Rapaport from obtaining the clerkship he thought he deserved. Of course, a review of the Complaint confirms that the *real* cause of Rapaport's not getting the clerkship he wanted was his failure to apply.

In any event, Rapaport fails to plead facts to support his claims, which are brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Sherman Antitrust Act ("Sherman Act"). In fact, Rapaport fails to allege facts supporting any element of his claims. Rather, Rapaport's claims are entirely implausible, and they border on the frivolous. Accordingly, the Court should dismiss the claims brought against Defendants Ajay Iyer, Zachary Garrett, William Weinberg, and Andrew Nelms ("Student Defendants") for failing to state a claim.

**BACKGROUND**

Plaintiff Gideon Rapaport is a recent graduate of NYU Law, and he alleges civil RICO and antitrust violations against Defendants Richard Epstein and five former NYU Law students. In the main, Rapaport's Complaint centers around his perception that Defendants allegedly captured and retained control of the NYU Federalist Society student chapter ("Student Chapter").

According to Rapaport, Defendants conspired to oust him from his position as president of the Student Chapter in September 2020. Compl. ¶ 79 (ECF No. 1). To do so, Defendants allegedly relied on false statements about his leadership. *Id.* ¶ 61. Defendants also allegedly extorted, blackmailed, and threatened other Student Chapter members to vote to oust Rapaport from his position. *Id.* ¶¶ 78–79. From there, Defendants allegedly extorted, blackmailed, and threatened the Federalist Society's national organization to demand that the Student Defendants be able to retain control of the Student Chapter. *Id.* ¶ 210.

More than one year later, in 2022, Rapaport alleges that he was outside a bar in New York speaking with Defendant Garrett. *Id*. ¶ 118. Allegedly, another student reported to the bar that Rapaport "had been 'creeping' on her," and the bar would not permit Rapaport to reenter. *Id.* ¶¶ 118–19. When Rapaport later claimed that the bar violated his human rights, *id.* ¶ 122, Rapaport alleges that Defendants Iyer and Pallaki instructed Defendant Garrett to perjure himself in any investigation conducted following Rapaport's human rights complaint. *See id.* ¶ 123.

Later still, Rapaport alleges that, during the summer of 2022, Defendants Pallaki, Iyer, and Garrett fabricated pictures of the security desk of Kirkland & Ellis's New York office to support a defamatory story that Rapaport was fired from his summer associate position for sexual harassment, and that he was banned from the premises. *Id.* ¶¶ 128–139. Rapaport claims that the allegedly defamatory allegations constituted wire fraud because they were posted online, emailed, and discussed by phone. *Id.* ¶¶ 128–139, 214.

Beyond those allegations against his former classmates, Rapaport scatters various allegations against Professor Epstein throughout his Complaint, largely claiming that Professor Epstein controls the clerkship market at NYU.

## ARGUMENT[1]

Rapaport's Complaint fails to satisfy his burden to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is particularly true given that he bases several of claims on purported fraud, which requires that the Complaint satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rather, the Court should dismiss the claims against Student Defendants because Rapaport's allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To be sure, the Court must accept as true the Complaint's factual allegations, but it must disregard the Complaint's many "conclusory allegations" and "'formulaic recitations of the elements of a cause of action.'" *Sacerdote*, 9 F.4th at 107 (quoting *Twombly*, 550 U.S. at 555). Additionally, courts in this Circuit recognize that "[a] plaintiff's burden is high when pleading RICO allegations as '[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies.'" *Mackin v. Auberger*, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014) (collecting cases).

---

[1] Student Defendants expressly adopt and incorporate the arguments advanced in the motion to dismiss filed by Defendant Pallaki.

Applying these standards, the Court should dismiss Rapaport's claims against the Student Defendants. Indeed, Rapaport has not alleged facts showing any plausible RICO violation. Similarly, Rapaport has fallen far short of alleging facts showing that the Student Defendants violated the Sherman Act by monopolizing the judicial clerkship market at NYU. Accordingly, the Court should dismiss all claims against the Student Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.

## I.      The Civil RICO Claims Fail.

Rapaport's substantive civil RICO claims, Claims I and II (Compl. ¶¶ 201–225), should be dismissed for failing to state a claim. For these claims, Rapaport must allege facts showing: (1) a substantive violation under 18 U.S.C. § 1962; (2) an injury to Rapaport's business or property; and (3) that the injury was by reason of the substantive RICO violation. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015). Rapaport fails to satisfy each of these requirements, and his RICO claims must be dismissed.

Rapaport's RICO conspiracy claims, Claims III and IV, fail for the same reasons. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 164 (2d Cir. 2004) ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims."); *M'Baye v. N.J. Sports Prod., Inc.,* No. 06-cv-3439-DC, 2007 WL 431881, at *8 (S.D.N.Y. Feb. 7, 2007) ("Where a substantive RICO claim is deficient, a RICO conspiracy claim under § 1962(d) must be dismissed.").

### A.      Rapaport fails to allege a substantive RICO claim.

The threshold requirement for a civil RICO claim is showing a substantive violation under 18 U.S.C. § 1962. For this, Rapaport must show: (1) the existence of an enterprise; (2) that the

enterprise engaged in or affected interstate or foreign commerce; and (3) a pattern of racketeering activity. 18 U.S.C. § 1962.[2]

### 1.    The Student Chapter is not an enterprise.

For the purposes of a civil RICO claim, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Rapaport's Complaint fails to allege sufficient facts showing that the Student Chapter is an enterprise. Instead, Rapaport simply refers to the Student Chapter routinely as an enterprise. Compl. ¶¶ 203, 224, 230, 236. But such conclusory statements will not suffice. *Sacerdote*, 9 F.4th at 107. Moreover, to qualify as a "union or group of individuals associated in fact," the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Cap. Asset Mgmt.*, 385 F.3d at 173–74. And the enterprise's regular course of conduct must be distinct from its alleged pattern of racketeering activity. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (holding that the activities of two loan officers acting within the scope of their authority could not subject them to RICO liability for conducting the affairs of the alleged enterprise-bank).

In the Complaint, Rapaport attempts to satisfy these requirements by claiming that the Defendants were engaged in an association-in-fact enterprise. But the Complaint undermines that

---

[2] Rapaport must also satisfy the additional requirements found in either 18 U.S.C. § 1962(b) or § 1962(c). Under subpart (b), Rapaport must demonstrate that the defendant acquired or maintained, directly or indirectly, an interest in or control of the enterprise by a pattern of racketeering activity. *Id.* § 1962(b). Alternatively, under subpart (c), Rapaport must demonstrate that the defendant was employed by or associated with the enterprise, and that the defendant conducted or participated, either directly or indirectly, in conduct of the enterprise's affairs through a pattern of racketeering activity. *Id.* § 1962(c). However, because Rapaport's Complaint fails to satisfy § 1962's threshold requirements, the Court need not analyze whether Rapaport's Complaint satisfies these subparts.

argument. As the Second Circuit explains, the defendants in an alleged association-in-fact enterprise must act "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (quoting *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013)). Indeed, "RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." *Id.* (quoting *Walgreen*, 719 F.3d at 851). But Rapaport's entire theory turns on Defendants' self-interest. He says the Student Defendants purportedly acted out of their own self-interests to curry favor with Professor Epstein to earn his recommendation for a clerkship. Such self-interest confirms there was no enterprise, which is fatal to Rapaport's RICO claims.

### 2.    Rapaport fails to allege sufficient predicate acts.

Even if Rapaport adequately alleged that the Student Chapter was an enterprise, his RICO claims must still be dismissed because he fails to allege that Student Defendants participated in any racketeering activity. *See* 18 U.S.C. § 1962. But that is not for lack of effort, as Rapaport fills his Complaint with various allegations of alleged predicate acts. However, at each turn, Rapaport's allegations are foreclosed by statute or binding authority.

1. For one, Rapaport alleges that Iyer instructed Garrett to commit perjury about an alleged human rights violation based on Rapaport's being refused entry to a bar. Compl. ¶ 212. However, perjury is not a qualifying RICO predicate act. *See* 18 U.S.C. § 1961(1); *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) ("Congress did not include perjury as one of the enumerated RICO predicate offenses." (quoting *Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014))). And, if perjury is not a RICO predicate offense, instructing someone else to commit perjury certainly cannot be a RICO predicate offense.

2. Rapaport also alleges that Defendants engaged in witness tampering regarding an investigation into Rapaport's claims that his human rights were violated when a bar in New York denied him entry. *See* Compl. ¶¶ 213, 224. But witness tampering only satisfies the predicate-offense requirement in limited circumstances, where the tampering is related to: (1) "kill[ing] or attempt[ing] to kill another person," 18 U.S.C. § 1512(a); (2) "us[ing] physical force or the threat of physical force," *id.*; (3) "knowingly us[ing]" intimidation, threats, or corrupt persuasion, or attempting to do so, or "engag[ing] in misleading conduct toward another person" regarding "an official proceeding," *id.* § 1512(b); or (4) "intentionally harass[ing] another person" to prevent their participation in certain official, federal, or criminal proceedings, *id.* § 1512(d). But the "official proceeding" provision does not apply to "[p]roceedings in state courts or before state administrative bodies." *Miller v. Carpinello*, No. 06-cv-12940(LAP), 2007 WL 4207282, at *7 n.6 (S.D.N.Y. Nov. 20, 2007).

Nor may Rapaport point to an alleged investigation. As various circuits have held, "a criminal investigation is not an 'official proceeding' under the obstruction of justice statute" because the term specifically "connotes some type of formal hearing." *United States v. Ermoian*, 752 F.3d 1165, 1170, 1172 (9th Cir. 2013); *accord United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008). And, if a criminal investigation is not an official proceeding, then an alleged human rights investigation certainly does not suffice.

3. Rapaport also alleges that Defendants obstructed justice. Compl. ¶ 213. Although obstruction of justice is a RICO predicate, *see* 18 U.S.C. § 1961(1), it is expressly limited to federal court proceedings, *see* 18 U.S.C. § 1503; *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 708 (2d Cir. 1990). But no federal court proceedings have been alleged here. And, while not raised in the Complaint, obstruction of State or local law enforcement is a RICO predicate, *see* 18 U.S.C.

§ 1961(1), but it is expressly limited to enforcement of "criminal laws … with the intent to facilitate an illegal gambling business," *see id.* § 1511. This case obviously does not present any issues related to an illegal gambling business.

4.  Rapaport also reprises his claims from his other pending lawsuit, where he complains about statements made online about his purportedly being fired from Kirkland & Ellis. Compl. ¶ 214. This time, however, Rapaport attempts to repackage his defamation claim (which is already subject to a fully briefed motion to dismiss) as a predicate RICO offense by characterizing it as wire fraud. *Id.* This will not do.

Indeed, defamation is also not a RICO predicate. *See* 18 U.S.C. § 1961(1); *Kimm v. Lee*, No. 04-cv-5724(HB), 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) (collecting cases), *aff'd sub nom. Kim v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006). And Rapaport cannot shoehorn a garden-variety defamation claim into a RICO predicate by calling it wire fraud. Rather, the mail and wire fraud statutes are intended "to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings." *Kimm*, 2005 WL 89386, at *5 (quoting *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union,* 215 F.3d 923, 927 (9th Cir. 2000)). In fact, courts in this district have repeatedly found that a plaintiff pleading "thinly clothed defamation claims" as RICO predicates under the mail or wire fraud statutes comes "perilously close to violating Rule 11 in his pleading of RICO claims because, *inter alia*, the insufficiency of a defamation charge as a RICO predicate act is ascertainable from the face of the statute." *Id.* at *4, *5 (cleaned up). Thus, the alleged distribution of false images is clearly not a RICO predicate, and Rapaport cannot dress it up as wire fraud.

5. Elsewhere, Rapaport alleges that Defendant Weinberg participated in a predicate act by sending Rapaport work product that he says intentionally included typos. Compl. ¶¶ 64, 207.

Rapaport does not explain what RICO predicate covers transmitting intentionally defective work product. Even under a charitable reading of the Complaint that this transmission was wire fraud, it would fail. Wire fraud must be pleaded with particularity, Fed. R. Civ. P. 9(b), but the Complaint clearly does not do so. The wire fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" by use of U.S. wires. 18 U.S.C. § 1343. This statute "do[es] not define 'scheme to defraud,' but it has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2000) (quoting *McNally v. United States,* 483 U.S. 350, 358 (1987)). "It is plain that intent to injure is not the equivalent of intent to defraud." *Kimm*, 2005 WL 89386, at *4 (cleaned up). The alleged transmission of defective work product plainly is not wire fraud, as Rapaport fails to allege that "money or property" was the goal of the alleged "scheme," and he fails to allege with particularity an "intent to defraud" behind sending the allegedly defective work product. Accordingly, this also fails to constitute a RICO predicate act.

6.  Rapaport also alleges that Defendants Weinberg and Nelms extorted, blackmailed, and threatened the Federalist Society national organization to prevent the national organization from stepping in and stopping Defendants' alleged "capture of the enterprise [*e.g.*, the Student Chapter]." Compl. ¶ 210.

This allegation fails for several reasons. For one, Rapaport does not allege that *he* suffered an injury. Rather, he claims that the Federalist Society was injured. *Id*. However, the injury must be to the plaintiff's "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (RICO plaintiff can recover for "injuries it suffered directly," not for injuries suffered by a third party). But even if that were not fatal, the claim still fails because Rapaport only alleges (¶ 210) a threatened

"reputational harm and embarrassment," which cannot support a RICO predicate. *See Kimm*, 2005 WL 89386, at *4; *United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988) ("[I]f one's reputation—standing alone—could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute—a startling proposition."), *aff'd*, 868 F.2d 1268 (2d Cir. 1988). Moreover, this claim also fails because an "act of extortion requires the interference or attempted interference with commerce by the 'obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" *O'Malley*, 896 F.2d at 708 (quoting 18 U.S.C. § 1951(b)(2)).

Rapaport has not alleged that the alleged extortion resulted in obtaining any property interest, just control of the Student Chapter. And it was not accomplished by threatened force, violence, or fear. Nor can Rapaport rely on state statutes about blackmail or threats unless they "fit the traditional definition of extortion." *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007). His claims of blackmail and threats thus fail for the same reasons that his extortion claim fails.

7. Rapaport similarly alleges that Defendant Nelms committed a predicate act by extorting, blackmailing, and threatening two student board members to vote against Rapaport. Compl. ¶ 209. As just explained, extortion, blackmail, and threats require obtaining property from another, not just suffering reputational or personal harms. *O'Malley*, 896 F.2d at 708. The addition of the word "menace" fails for the same reason as blackmail and threats. Such alleged acts are not RICO predicates, and they can only be considered state-law derivative acts under 18 U.S.C. § 1961(1)(A) if they "fit the traditional definition of extortion." *Wilkie*, 551 U.S. at 567. They do not.

8. Finally, Rapaport claims that Defendants filed a false complaint with NYU allegedly accusing Rapaport of poor leadership of the Student Chapter. Compl. ¶¶ 61, 205. But filing a false complaint with a school is not a RICO predicate. *See* 18 U.S.C. § 1961(1). If Rapaport meant to

allege it to be wire fraud, it would still fail, for the reasons discussed above. Nor does Rapaport allege any intent to defraud him of property, as required. *See Autuori*, 212 F.3d at 115; *Kimm*, 2005 WL 89386, at *4. In fact, Rapaport alleges that this false complaint "did not result in any formal investigation or punishment." Compl. ¶ 61.

For these various reasons, the Complaint fails to allege sufficient facts showing that the Student Defendants participated in a requisite predicate act.

### 3. Rapaport fails to allege a pattern of racketeering activity.

Rapaport also fails to allege a sufficient pattern of racketeering activity. *See* 18 U.S.C. § 1962. To satisfy this requirement, Rapaport must allege at least two predicate acts within a 10-year period. 18 U.S.C. § 1961(5). Rapaport must also allege that each Defendant "personally committed" two or more predicate acts of "racketeering activity." *McLaughlin v. Anderson*, 962 F.2d 187, 191–92 (2d Cir. 1992); *see also* 18 U.S.C. § 1961(5). When the Court "analyz[es] the issue of continuity," it "evaluate[s] the RICO allegations with respect to each defendant individually." *First Cap. Asset Mgmt.*, 385 F.3d at 180. In doing so, this Court "must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Est. of Andy Warhol,* 119 F.3d 91, 98 (2d Cir. 1997). Additionally, the alleged predicate acts must "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

This "continuity requirement" can be satisfied in two ways. A plaintiff can allege that the predicate acts show a "closed-ended" pattern of racketeering activity—that is, "a series of related predicate acts extending over a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing *H.J. Inc.*, 492 U.S. at 241). Or a plaintiff can allege an "open-ended" pattern of racketeering activity that "poses a threat of continuing criminal

11

conduct beyond the period during which the predicate acts were performed." *Id.* (citing *H.J. Inc.*, 492 U.S. at 241). Rapaport fails to allege either.

1. Rapaport has not alleged a closed-ended pattern because he has not alleged that Defendants' purported RICO violations extended over a "substantial period of time," which is generally understood to mean at least two years. *See First Cap. Asset Mgmt.*, 385 F.3d at 181. In fact, the Second Circuit "ha[s] never found predicate acts spanning less than two years to be sufficient to constitute closed-ended continuity." *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). However, "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt.*, 385 F.3d at 181.

Rapaport alleges that Defendants' purported acts occurred in September 2020, when he was ousted as president; in April 2022, when he was denied entry to a bar; and in July and August 2022, when he was the subject of allegedly false images distributed on the internet. Compl. ¶¶ 205–10, 212–14. Rapaport does not allege that Defendants Garrett and Iyer participated in the acts of September 2020, nor does he allege that Defendants Nelms or Weinberg participated in the 2022 acts. The discrete acts alleged in the Complaint, involving different groups of people, fall far below the "minimum duration necessary to find closed-ended continuity." *First Cap. Asset Mgmt.*, 385 F.3d at 181 (emphasis omitted).

2. Similarly, Rapaport has not sufficiently alleged an open-ended scheme, which requires conduct projected into the future. *Spool*, 520 F.3d at 183. The Complaint clearly alleges that any involvement by the Student Defendants in the alleged civil RICO violations ended by August 2022. The Student Defendants and Rapaport have all graduated and have no ongoing relationship.

Because Rapaport has not properly pleaded a pattern of racketeering activity, he has failed to adequately allege a substantive RICO violation.[3]

### B.    Rapaport's alleged injuries do not support a RICO claim.

Rapaport's Complaint must also be dismissed because he has not alleged a cognizable injury. *See* 18 U.S.C. § 1962. Instead, his alleged injuries are only reputational, which cannot support a RICO claim. As the Second Circuit explains, there is no RICO injury where "the generalized reputational harms alleged, including the risk of future lost business commissions, are too speculative to constitute an injury to business or property." *Chang Hoon Lee & Champ,*, 196 F. App'x at 16 (summary order) (citing *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990)); *see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("[R]eputational injuries are insufficient to support a civil RICO claim."). And the injury to business or property "must be different from the damages that flow from the predicate acts themselves." *D'Addario v. D'Addario*, 901 F.3d 80, 98 (2d Cir. 2018) (cost of replacing property destroyed by arson to extort plaintiff not sufficient; must show damages from ultimate acquisition of enterprise). Accordingly, Rapaport's allegations of reputational injuries (at ¶¶ 175–76, 208) will not do.

To the extent Rapaport attempts to reframe his reputational injuries as an "injury to his business," Compl. ¶ 218, he cannot do so. The Second Circuit has explained that "[c]ourts in this district and others have persuasively concluded that reputational harm resulting in the loss of

---

[3] Even if Rapaport had alleged a pattern here, the civil RICO statute would be unconstitutionally vague as applied here. Justice Scalia raised this issue in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 251 (1989) (Scalia, J., concurring). The fact that RICO "has criminal applications" means it "must, even in its civil applications, possess the degree of certainty required for criminal laws." *Id.* at 255 (quoting *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954)). Justice Scalia noted that the vagueness issue was not then before the Supreme Court, but "[t]hat the highest Court in the land has been unable to derive from [RICO] anything more than today's meager guidance bodes ill for the day when that challenge is presented." *Id.* at 256.

business opportunities is a cognizable RICO injury if the pecuniary losses from the missed opportunities are quantifiable and non-speculative." *Nygård v. Bacon*, No. 19-cv-1559(LGS), 2021 WL 3721347, at *5 (S.D.N.Y. Aug. 20, 2021) (collecting cases). Where, as here, a plaintiff only alleges "generalized reputational harms," including "the risk of future lost business," the allegations "are too speculative to constitute an injury to business or property." *Chang Hoon Lee & Champ*, 196 F. App'x at 16 (citing *Hecht*, 897 F.2d at 24); *accord Kerik*, 64 F. Supp. 3d at 561 ("[R]eputational injuries are insufficient to support a civil RICO claim."); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-cv-1861, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021) (allegations failed to allege a plausible injury for civil RICO where they "fail to identify specific instances of lost business and only conclusorily allege potential lost clients based on reputational harm") (collecting cases), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

Nor does a non-business injury "become a business injury simply by virtue of calling it that; what Plaintiffs allege again here is, at most, a non-economic injury, which is not cognizable as a RICO injury." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 615 (S.D.N.Y. 2015). Simply put, control of the Student Chapter "cannot be considered property in the hands of the victim." *Id.* at 603.

Thus, Rapaport's Complaint fails to allege any non-speculative or quantifiable injuries, and he has therefore failed to satisfy a requirement for his civil RICO claims, which must be dismissed.

### C.    Rapaport has not properly alleged causation.

Finally, Rapaport's RICO claims fail because he cannot demonstrate causation, which requires that his injuries were caused by the alleged substantive civil RICO violation. *See* 18 U.S.C. § 1962. In this Circuit, a plaintiff must allege facts showing that "the RICO pattern or acts … *proximately* cause plaintiff's injury," meaning that "they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural

consequence." *Hecht*, 897 F.2d at 23–24. RICO plaintiffs are held "to a more stringent showing of proximate cause than would be required at common law," so not only must the plaintiff be "in a foreseeable category of persons who might be harmed," but "the kind of harm the victim suffered [must] be foreseeable as well" and "it is usually easier for intervenors to break the chain of causation in RICO[.]" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 n.5 (2d Cir. 2006) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi, J., concurring)). Rapaport's Complaint fails to satisfy this requirement for a host of reasons, including the lack of any injury or Rapaport's failure to account for intervening events.

For all Rapaport's complaints about being ousted as president of the Student Chapter, he fails to identify any injury cognizable under RICO. Indeed, to the extent Rapaport alleges that this impacted his ability to obtain a clerkship, the Complaint tells another story. Rather, according to Rapaport, after his ouster, Epstein was still willing to recommend Rapaport for clerkships, and Epstein offered Rapaport a journal position and a position "to teach Property in addition to Food and Drug Law." Compl. ¶ 126. Thus, the ouster had no impact on Rapaport's perceived injury.

Similarly, for all Rapaport's complaints about not being able to reenter a bar and the ensuing human rights claim, *id.* ¶¶ 119, 122, Rapaport again fails to identify any injury. With no causal link between this incident and any damages, this cannot support Rapaport's RICO claims.

With respect to the other alleged racketeering acts, Rapaport fails to account for various intervening events, each of which breaks any causal chain. For instance, to the extent Rapaport complains about not obtaining a clerkship, his failure to even *apply* for a clerkship is a significant intervening cause that breaks the causal chain for the Student Defendants. So too is the lack of a recommendation from Professor Epstein.

Additionally, when discussing the allegedly forged photographs, Rapaport alleges that the Federalist Society national organization saw through the forgeries and took no action in response, *see id.* ¶ 138, and thus no harm could have been caused as to Rapaport's relationship with the Federalist Society. Elsewhere, Rapaport alleges that Professor Epstein continued to "boycott" him even after learning that the photographs of Rapaport were "false and supported by forgeries." Compl. ¶ 140. So, the allegedly false and forged photographs also could not have been a cause of Rapaport's alleged harm.

Thus, Rapaport fails to connect any alleged injury to an action of the Student Defendants.

\* \* \*

Rapaport has failed to allege any plausible civil RICO violation. His Complaint does not show the existence of a RICO enterprise; the Student Defendants' alleged acts are not RICO predicates, and, even if they were, they do not show a pattern of racketeering activity; and Rapaport likewise fails to show a cognizable injury or causation. Accordingly, the Court should dismiss Rapaport's RICO claims.

## II.    The Monopoly Claims Fail.

Rapaport also claims that the Student Defendants violated or attempted to violate the Sherman Act. *See* Compl. ¶¶ 237–46. Here again, those claims should be dismissed because the Complaint does not plausibly state any Sherman-Act claims.

To state a claim for monopolization under Section 2 of the Sherman Act, Rapaport must demonstrate that: "(1) the defendant had monopoly power in the relevant market; (2) the defendant engaged in anticompetitive conduct; and (3) [the plaintiff's] injury was, in fact, caused by the defendant's violation of the antitrust laws." *Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 244 (2d Cir. 1992) (internal quotation marks omitted). And, to state a claim for *attempted* monopolization, Rapaport must demonstrate that: (1) the defendants engaged in predatory or

16

anticompetitive conduct; (2) with a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 99–100 (2d Cir. 1998).

For these claims, a defendant must have "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition[.]" *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2002). Additionally, "[i]n order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports,* 506 U.S. at 456. Rapaport's monopoly claims fail each of these requirements, and they are entirely implausible.

### A.    Rapaport fails to allege actual or attempted monopoly power.

Rapaport's allegations do not show that the Student Defendants had any monopoly power. To be sure, Rapaport alleges that Defendants monopolized the judicial clerkship market flowing through NYU Law, which is "one of a handful of pipelines to such professional distinction and employment, which are a requirement for access to this market." Compl. ¶¶ 238, 243. But Rapaport does not allege how the Student Defendants played *any* role in that process. Instead, Rapaport points the blame elsewhere. *Id.* ¶¶ 239, 244.

Rapaport's monopoly claims fail for another reason—they have no basis in fact. Indeed, these claims are based on a complete misunderstanding of how clerkship hiring works, insulting the judiciary by contending that Professor Epstein has "succeeded in effectively converting a record amount of federal clerkship positions into his private property, which he has trafficked in for his personal power, gratification and profit[.]" Compl. ¶ 36. Of course, Rapaport fails to acknowledge that it is the *judges* who choose their clerks through a highly competitive process. And Rapaport does not allege even one instance where a judge was compelled to rely on Professor

Epstein's recommendations. The Complaint is simply silent on how Defendants have "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition[.]" *PepsiCo*, 315 F.3d at 108.

Nor does Rapaport show a specific intent to monopolize, as an attempted monopolization claim requires. *See, e.g., Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 180 (2d Cir. 1990). Under these allegations, Epstein cannot be said to have a "dangerous probability of achieving monopoly power," much less the Student Defendants. Any clerkships filled through Professor Epstein's recommendation come because judges *choose* to give weight to his recommendation. The Student Defendants have nothing to do with it, and that is fatal to Rapaport's monopoly claims.

**B.      Rapaport fails to allege anticompetitive conduct in the relevant market.**

Rapaport's monopoly claims also fail because the Complaint lacks allegations of anticompetitive conduct in the relevant market. An antitrust plaintiff must define "the relevant market and examination of market power." *Spectrum Sports,* 506 U.S. at 455; *accord Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,* 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009) ("[I]n a case that requires proof of a relevant market, it is not enough to survive even a Rule 12(b)(6) motion to dismiss to make bald assertions as to its existence or definition."). And the plaintiff may not "[m]erely assert[] that a commodity is in some way unique" without "explain[ing] why the market [he] alleges is the relevant, economically significant product market." *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,* 909 F. Supp. 162, 171 (S.D.N.Y. 1995).

Rapaport's own allegations undercut any contention that the supposed "racket" has monopolized or threatens to monopolize the "judicial clerkship market as flowing through the New York University School of Law[.]" Compl. ¶¶ 238, 243. Rather, there are many other paths to federal clerkships. Indeed, NYU students undoubtedly obtain federal clerkships beyond just those

who receive a recommendation from Professor Epstein. As Rapaport alleges, NYU has "devised formal and informal policies" for creating a "controlled opposition" that will fill "detested conservative slots" in federal clerkships. Compl. ¶¶ 196–97. Rapaport has not plausibly alleged that those clerkships are uniquely available through Professor Epstein, and he has not alleged that the other opportunities were unavailable to him. Nor has Rapaport accounted for the fact that his failure to apply for a clerkship was the primary, self-inflicted reason for not obtaining a clerkship. And Rapaport similarly fails to allege the other basic elements of a traditional market, namely prices or market participants.

At most, Professor Epstein is a long-tenured legal professor who has provided many successful clerkship recommendations because of his reputation. Rapaport's allegations fail to allege anticompetitive conduct generally, and certainly with respect to the Student Defendants. *See In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019) (rejecting "impermissible group pleading").

If anything, Rapaport's Complaint confirms that the clerkship market is highly competitive, which undermines his monopoly claims as antitrust laws exist "for 'the protection of competition not competitors.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962)). But here, Rapaport merely claims that he lost out on a clerkship he thought he deserved. That does not suffice for a monopoly claim, as Rapaport must "allege an injury beyond harm to an individual competitor." *Miller v. Nicholas*, No. 20-cv-5230(WFK)(SJB), 2021 WL 9037639, at *2 (E.D.N.Y. Nov. 3, 2021).

For these reasons, Rapaport's monopoly claims are plainly implausible, and they should be dismissed.

## CONCLUSION

As a review of the Complaint confirms, Rapaport harbors great ill will toward Professor Epstein. And it appears that these feelings are the result of Rapaport's not getting job opportunities that he thought should be handed to him. However, hurt feelings are no basis for levying harmful allegations against various former NYU students. The notion that Professor Epstein and the Student Defendants concocted and advanced a RICO enterprise aimed at preventing Rapaport from obtaining a job is implausible, to say the least. That is likely why Rapaport cannot allege facts showing an enterprise, causal injury, predicate acts, or a pattern of racketeering. Even less plausible is Rapaport's attempt to show that the Student Defendants captured the clerkship market at NYU—were that even a thing—and monopolized it to Rapaport's detriment.

For these various reasons, the Court should dismiss Rapaport's claims against Student Defendants for failing to state a claim.

Dated: February 13, 2025                    Respectfully submitted,

                                            /s/ Brian J. Field
                                            Brian J. Field (admitted *pro hac vice*)
                                            D.C. Bar No. 985577
                                            SCHAERR | JAFFE LLP
                                            1717 K Street NW, Suite 900
                                            Washington, DC 20006
                                            Telephone: (202) 787-1060
                                            Facsimile: (202) 776-0136
                                            Email: bfield@schaerr-jaffe.com

                                            *Counsel for Student Defendants*