The Honorable Jessica G. L. Clarke
United States District Court Judge
Southern District of New York
500 Pearl Street
New York NY, 10007

Re:     Rapaport v. Epstein et al., 24-cv-07439

**Letter Motion to Stay Proceedings Pending Appeal**

Your Honor:

I am respectfully writing to request a stay all consolidated proceedings pending the appeal from the now consolidated *Rapaport v. Iyer et al.* 23-cv-06709.

Such a stay would be in the interest of judicial economy because it will allow both consolidated cases to advance together and be considered by the Court uniformly, thus serving the aims of the consolidation. A stay will avoid the duplicative work arising from the appealed *Rapaport v. Iyer et al.* which is to be consolidated into a single pleading in this docket per the Court's current order.

There will be no harm to the defendants resulting from a stay pending the resolution of the appeal and all parties may benefit from the increased efficiency and consistency. I respectfully remind the Court that I sought to join all of these claims together in the interest of efficiency but was prevented from doing so because defendants Epstein, Iyer and Garrett represented to the Court that any amendment of my pleading would be futile, and the briefing schedule for my request for leave to amend would have caused the statute of limitations to limit some of my new claims.

I respectfully submit that the appeal from *Rapaport v. Iyer et al.* has a substantial likelihood to succeed and raises serious legal questions. The Court erred in its choice of law analysis by not applying New Jersey law to the false light and invasion of privacy claim as endorsed in the Second Circuit's citation of *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) in *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d. Cir. 2021) n.21. The Court took the plaintiff's arguments relating to his "local community" as merely arguments based on domicile when they referred to the location of the injury, which is also New Jersey, and together with domicile should be dispositive. New York choice of law analysis is done by issue as legally defined, rather than being generally attached to shared facts or parties as the Court reasoned in reference to the plaintiff's bringing of other claims under New York law. For example, in determining that New York law would apply to a car accident that occurred (exclusively) in Ontario, Canada involving New York residents the New York Court of Appeals concluded "There is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 12 NY2d 473 at 484.

Unlike defamation, which has a global and reputational scope, New Jersey false light and invasion of privacy claims have a purely local scope protecting only the mental tranquility and privacy of individuals in their local community, and not their reputation. In *Romaine v. Kallinger*, 537 A.2d 284 (NJ 1988), the New Jersey Supreme Court distinguished that: "The interest protected by the duty not to place another in a false light is that of the individual's peace of mind …. 'The action for defamation,' on the other hand, 'is to protect a person's interest in a good reputation…' *Prosser and Keeton on the*

*Law of Torts*, supra § 117, at 864". According to its own choice of law rules, New York has little to no interest in such an injury that is limited entirely to the territorial boundary of New Jersey.

  The Court erred in relying upon the plaintiff's New York school and work reputational injuries as they relate to defamation because they are legally unrelated to the false light and invasion of privacy suffered by the plaintiff in his local community in New Jersey. An invader of privacy is "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another" *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81 609 A.2d 11 (NJ 1992). Prior to these defendants' publications, which included the image of the plaintiff on a digitally fabricated "Do Not Admit" poster purported to have been displayed at his workplace, the New Jersey plaintiff enjoyed perfect solitude and seclusion, had "peace of mind" as identified by *Romaine,* and was not publicly displayed or discussed anywhere on the internet to the best of his knowledge.

  The Court erred by not disqualifying Schaerr-Jaffe LLP from this matter due to the conflicts of interest between its clients, which are of the sort that is incapable of remedy by waiver. Defendant Garrett identified defendant Iyer as the source of the second defamatory forgery in writing *Exhibit 3*, and then signed a waiver under penalty of perjury that he and defendant Iyer have engaged in no wrongdoing either together or separately *Rapaport v. Iyer et al.* Docket No. 75-2. The result is an unwaivable conflict of interest that will require defendant Garrett to take an adverse position against himself by representing, through lawyers shared with defendant Iyer, that defendant Iyer was not the source of the second defamatory forgery he sent as he has previously put in writing, or to admit to perjury in his waiver. No attorney maintaining the duty of loyalty to defendant Garrett could have placed him in such a position, as Schaerr-Jaffe does for the benefit of defendant Iyer.

  As a result of the conflicted representation, defendant Garrett is prejudiced by material limitation upon representation of a belief in the authenticity of the defamatory material sent to him by defendant Iyer (in affirmation of his previous writings in *Exhibit 3*) in order to protect himself from liability *See United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (Conviction overturned due to inability to pursue the defense of blaming a jointly represented co-defendant). The mere potential for adverse positions which have not yet materialized may also establish a conflict *See GSI Commerce Solutions, Inc. v. BabyCenter LLC*, 644 F.3d 141 (2d Cir. 2011) finding an unwaivable "actual or apparent conflict in loyalties" citing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976).

  The Court erred by concluding that the defamatory internet posts referred to by the plaintiff in his Amended Complaint were solely those converted to PDF format, marked up and forwarded to the James Kent Academy program of the Federalist Society by defendant Garrett *Exhibit 3* on August 1, 2023. There was no basis in the Amended Complaint for such a conclusion by implication, and such a conclusion contradicts the Court's assertion that the standard it applies requires that "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Decision* at 7 citing *Hughes v. Rowe*, 449 U.S. 5, 10 (1980). The allegations were never limited to specific web *pages* by link but rather web *sites* that can and do contain many pages. The contents of the email sent by defendant Garrett were exhibited to demonstrate that he had made defamatory statements orally "as I mentioned to you over the weekend…" *Exhibit 3* at 1, and forwarded the second defamatory forgery and defamatory statements. Furthermore, even if taken as the entirety of the internet posts which are the subject of the action, an August 1, 2023 snapshot cannot be an absolute bar to the plaintiff from

alleging that those particular threads of posts had different contents on or about July 29, 2023 because such online posts can be edited or deleted at any time.

     The Court erred in denying the relation back of claims involving slander (which include among many also oral statements made to defendant Epstein and the staff of the Federalist Society) by finding that "Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the 'anonymous internet posts.'" *Decision* at 17. The Court did not consider Part F of the Original Complaint titled "**Oral Component Of Character Assassination Campaign**" (emphasis original). This part described with great accuracy the oral slanders alleged in the Amended Complaint and referenced in *Exhibit 3* "as I told you..." Such a title and the following detailed paragraphs OC ¶¶ 29-30 would certainly apprise the defendants that their specific oral slanders were also part of the action. Hence the oral slander allegations are not "new instances of defamation" *Decision* at 17. Similarly, the Court also erred in denying the relating back of the email forwarding the published tortious materials and allegations to the James Kent Academy because the Original Complaint specifically alleged that defendants had forwarded the materials to the James Kent Academy, which is a program of the Federalist Society, "Defendants timed the publication and **forwarding** of the anonymous internet posts very closely to the start of the James Kent Summer Academy" OC ¶ 21 (emphasis added).

     The Court erred in its finding that the Amended Complaint did not specifically identify which of the student defendants made the online posts *Decision* at 22, because defendant Iyer was specifically identified per AC ¶ 42 "On or about July 29, 2022, defendant Garrett presented the online materials, **created and posted pseudonymously by defendant Iyer**, to Peter Redpath and Kate Alcantara, the Director and Deputy Directors of the Student Division respectively." (emphasis added).

     The Court erred by dismissing with prejudice and without analysis all other claims referred to as "omnibus" claims which were either valid in addition to the aforementioned claims, or would have served as alternatives as in the case of intentional infliction of emotional distress. The Court dismissed with prejudice the intentional infliction of emotional distress claim because it would be "duplicative" of defamation, but the Court did not follow up on evaluating its applicability after dismissing with prejudice the defamation claims against student defendants, especially considering that the lack of communication to a third party and relating back notice faults found by the Court with respect to defamation are not respectively elements of or applicable to intentional infliction of emotional distress.

     The Court erred in the *sua sponte* dismissal with prejudice of claims against defendant Epstein due to the statute of limitations. The Court cited to *V.E.C. Corp. of Delaware v. Hilliard*, No. 10-CV-2542 (VB) 2011 WL 7101236, at *11 (S.D.N.Y. Dec. 13, 2011), but that court itself stated: "Courts should be reluctant to dismiss a claim *sua sponte* based on the statute of limitations because it is an affirmative defense which is waived if not raised in the first responsive pleading. *See Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir.1993)." By describing the defamation committed by defendant Epstein in "forwarding" of the defamatory materials to the James Kent Academy OC ¶ 21, he could be apprised that he was a defendant by the Original Complaint, thus satisfying CPLR 1024 with respect to him as well.

     The above mentioned matters are not an exhaustive list of all issues expected to be raised on appeal, but are respectfully submitted to demonstrate a clear likelihood of success and the raising of serious legal questions that is sufficient to warrant a stay pending appeal.

Thank you for considering my request in this matter.

>Respectfully submitted,
>
>>/s/ Gideon Rapaport *pro se*
>>GideonRapaportLaw@outlook.com
>>(862) 213-0895
>>#627 1078 Summit Avenue
>>Jersey City, New Jersey, 07307