UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

GIDEON RAPAPORT,

                         Plaintiff,

            - against -

RICHARD ALLEN EPSTEIN, MITCHELL
KEVALLA PALLAKI, AJAY
SRINIVASAN IYER, ZACHARY
GEORGE GARRETT, WILLIAM STUART
LASSETER WEINBERG, ANDREW
NELMS, JOHN DOES 1-3,

                 Defendants.

------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 24-cv-07439-JGLC


**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT
RICHARD A. EPSTEIN TO DISMISS THE AMENDED COMPLAINT**


Jeremy Chase
Gerald A. Stein
Nimra Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: 212-489-8230
Fax: 212-489-8340
Email:  jeremychase@dwt.com
        geraldstein@dwt.com
        nimraazmi@dwt.com

*Counsel for Defendant
Professor Richard A. Epstein*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

    A.    Parties ............................................................................................................ 2

    B.    Plaintiff's Allegations ................................................................................... 2

        1.    Plaintiff's Allegations That Professor Epstein Controls Clerkships ........... 2

        2.    Plaintiff's Allegations About the Relationship Between The Parties ........ 3

        3.    Plaintiff's Allegations about Defendants' Supposed Misconduct ............. 4

    C.    The FAC ........................................................................................................ 5

ARGUMENT ................................................................................................................... 6

I.      PLAINTIFF FAILS TO STATE A RICO CLAIM ............................................ 6

    A.    Plaintiff Fails to Plead a "Pattern" of Racketeering Activity ................................ 7

        1.    The FAC Fails to Allege Any RICO Predicates ......................................... 7

        2.    The FAC Fails To Allege Continuity ........................................................ 12

    B.    Plaintiff Fails to Plead the Existence of a RICO Enterprise ................................ 15

    C.    Plaintiff Fails to Plead a RICO Injury ................................................................. 16

    D.    Plaintiff Fails to Plead Causation ......................................................................... 18

    E.    Plaintiff Fails to Plead a RICO Conspiracy ......................................................... 19

II.     PLAINTIFF FAILS TO STATE CLAIMS UNDER FEDERAL ANTITRUST
       LAWS ........................................................................................................... 19

    A.    Plaintiff Fails to Allege an Antitrust Injury ......................................................... 20

    B.    Plaintiff Fails to Define a Relevant Market ......................................................... 22

        1.    Plaintiff Fails to Allege a Properly-Defined Relevant Market for his
           Monopoly or Attempted Monopoly Claims ............................................. 23

2.      Plaintiff Fails to Allege a Properly-Defined Market for his
Unreasonable Restraints of Trade Claims................................................. 25

CONCLUSION............................................................................................................... 25

CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS......................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*,
    181 F.3d 216 (2d Cir. 1999)................................................................................23

*Alix v. McKinsey & Co.*,
    2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023)....................................................19

*Apex Hosiery Co. v. Leader*,
    310 U.S. 469 (1940)............................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................6

*Azima v. Dechert LLP*,
    2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024)......................................................8

*Beter v. Murdoch*,
    2018 WL 3323162 (S.D.N.Y. June 22, 2018) .....................................................16

*Black v. Ganieva*,
    619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173
    (2d Cir. Mar. 2, 2023) ...............................................................................9, 15, 16

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
    2009 WL 928718 (E.D.N.Y. Mar. 31, 2009) ......................................................9

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)............................................................................................23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)......................................................................................21, 22

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)....................................................................8

*Chester Park View, LLC v. Schlesinger*,
    2024 WL 2785140 (S.D.N.Y. May 29, 2024) ........................................12, 13, 14

*Concord Assocs. L.P. v. Ent. Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016)..................................................................................25

*Conway v. Conway*,
    2019 WL 1331624 (S.D.N.Y. Mar. 25, 2019) ...................................................12

*D. Penguin Bros. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014) ........................................16

*Davis & Co. Auto Parts v. Allied Corp.*,
    651 F. Supp. 198 (S.D.N.Y. 1986) ........................................25

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019)........................................18, 19

*Entretelas Americanas S.A. v. Soler*,
    2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F. App'x 601
    (2d Cir. 2020), *as amended* (Jan. 7, 2021)........................................10, 11, 18

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)........................................15, 19

*Flannery v. County of Niagara*,
    763 F. Supp. 3d 364 (W.D.N.Y. 2025) ........................................13

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ........................................6

*Freund v. Lerner*,
    2010 WL 3156037 (S.D.N.Y. Aug. 10, 2010) ........................................6

*Furlong v. Long Island Coll. Hosp.*,
    710 F.2d 922 (2d Cir. 1983)........................................20

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997) ........................................24

*Glob. Merch. Cash Inc. v. Rome-Aire Servs., Inc.*,
    2024 WL 4515654 (E.D.N.Y. Oct. 17, 2024)........................................17

*Gulf Oil Corp. v. Copp Paving Co.*,
    419 U.S. 186 (1974)........................................20

*Harbulak v. Suffolk County*,
    654 F.2d 194 (2d Cir. 1981)........................................6

*Hollander v. Pressreader, Inc.*,
    2020 WL 2836189 (S.D.N.Y. May 30, 2020) ........................................9

*Ibrahim v. Pena*,
    2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017)........................................6

*In re Adelphia Commc'ns Corp.*,
    2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) ........................................18

*In re: Inclusive Access Course Materials Antitr. Litig.*,
2021 WL 2419528 (S.D.N.Y. June 14, 2021) .................................................................23, 25

*John Wiley & Sons, Inc. v. Shumacher*,
2010 WL 103886 (S.D.N.Y. Jan. 4, 2010) ...........................................................................22

*Johnson v. Commission on Presidential Debates*,
869 F.3d 976 (D.C. Cir. 2017) .............................................................................................21

*Juster Assocs. v. City of Rutland*,
901 F.2d 266 (2d Cir. 1990)..................................................................................................22

*Kimm v. Lee*,
2005 WL 89386 (S.D.N.Y. Jan. 13, 2005),
*aff'd*, 196 F. App'x 14 (2d Cir. 2006).........................................................................8, 10, 17

*Malester v. Adamo*,
2010 WL 5065865 (S.D.N.Y. Dec. 8, 2010) ..................................................................15, 16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ...........................................................................7

*Nassiri v. Craumer*,
1996 WL 209985 (S.D.N.Y. Apr. 30, 1996)........................................................................17

*Natsource LLC v. GFI Grp., Inc.*,
332 F. Supp. 2d 626 (S.D.N.Y. 2004)..................................................................................23

*Nygard v. Bacon*,
2021 WL 4926078 (S.D.N.Y. Oct. 21, 2021) ......................................................................18

*One World, LLC v. Onoufriadis*,
2021 WL 4452070 (2d Cir. Sept. 29, 2021) ...................................................................13, 19

*Pack v. Parker Jewish Inst. for Health Care & Rehab.*,
2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014).......................................................................17

*Palladino v. JPMorgan Chase & Co.*,
761 F. Supp. 3d 521 (E.D.N.Y. 2024) ..................................................................................22

*Park S. Associates v. Fischbein*,
626 F. Supp. 1108 (S.D.N.Y. 1986), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) ............................10

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002)............................................................................................22, 25

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
  2020 WL 9209278 (E.D.N.Y. Dec. 14, 2020),
  *aff'd*, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ...................................................................16

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
  886 F.3d 332 (3d Cir. 2018)........................................................................................................20

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  745 F. Supp. 2d 343 (S.D.N.Y. 2010).......................................................................................15

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017)............................................................................................................7

*Santana v. Adler*,
  2018 WL 2172699 (S.D.N.Y. Mar. 26, 2018), *report and recommendation adopted*,
  2018 WL 2170299 (S.D.N.Y. May 10, 2018) .............................................................................8

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003)......................................................................................................................10

*Schlesinger v. Schlesinger*,
  2007 WL 9706975 (E.D.N.Y. Nov. 15, 2007).........................................................................11

*SL-x IP S.a.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2023 WL 2620041 (2d Cir. Mar. 24, 2023)..............................................................................20

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993)......................................................................................................................23

*Spiteri v. Russo*,
  2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) .....................................................................6, 10

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008)........................................................................................................13

*THC Holdings Corp. v. Tishman*,
  1996 WL 291881 (S.D.N.Y. May 31, 1996) .........................................................................8, 18

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
  142 F.3d 90 (2d Cir. 1998).....................................................................................................23, 25

*Tsipouras v. W&M Props., Inc.*,
  9 F. Supp. 2d 365 (S.D.N.Y. 1998) ...........................................................................................17

*United States v. Caggiano*,
  2014 WL 104968 (W.D.N.Y. Jan. 9, 2014)................................................................................9

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ...........................................................................................23

*Villoldo v. BNP Paribas S.A.*,
  648 F. App'x 53 (2d Cir. 2016) ........................................................................17

*Virgin Atl. Airways Ltd. v. Brit. Airways PLC*,
  257 F.3d 256 (2d Cir. 2001) ..............................................................................23

*Vlahos v. Schroeffel*,
  2006 WL 544444 (E.D.N.Y. Mar. 6, 2006) .......................................................13

*Watral v. Silvernails Farms, LLC*,
  177 F. Supp. 2d 141 (E.D.N.Y. 2001) ...............................................................14

*Wilkie v. Robbins*,
  551 U.S. 537 (2007) ...........................................................................................10

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
  736 F. Supp. 2d 661 (W.D.N.Y. 2010) ..............................................................20

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).....................16

**Federal Statutes**

18 U.S.C.
  § 1512(b) .............................................................................................................12
  § 1951(b)(2) ........................................................................................................10
  § 1961(4) .............................................................................................................15
  § 1961(5) ...............................................................................................................7
  § 1962(b) .........................................................................................................5, 18
  § 1962(c) ...............................................................................................................7
  § 1964(c) .............................................................................................................16

**State Statutes**

NY Gen. Bus. Law § 340 ...............................................................................................20

**Rules**

Federal Rule of Civil Procedure 9(b) ...............................................................................9

Federal Rule of Civil Procedure 12(b)(6) .....................................................................1, 6

Defendant Richard Epstein ("Professor Epstein") respectfully submits this memorandum of law in support of his motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing with prejudice the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

This lawsuit is Plaintiff Gideon Rapaport's latest attempt to blame others for his unrealized career ambitions. The FAC in this action—like in his recently-dismissed defamation action—is a meritless screed that does not come close to stating a claim for relief. This time, Plaintiff concocts a wide-ranging conspiracy at New York University School of Law ("NYU Law") with purported designs to "monopolize" judicial clerkships with right-leaning judges. Plaintiff implausibly claims that Professor Epstein—the conspiracy's supposed "kingpin"—could unilaterally place hundreds of students in clerkships throughout the judiciary up to the U.S. Supreme Court. And despite allegedly promising Plaintiff a clerkship with a U.S. Court of Appeals judge and later a U.S. Supreme Court justice, Plaintiff claims Professor Epstein enlisted NYU Law students to capture the NYU Law Federalist Society chapter ("NYU FedSoc") and the Journal of Law and Liberty ("JLL") to prevent Plaintiff from securing his promised clerkships and destroy his career prospects. Plaintiff wraps this far-fetched narrative in the veneer of claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Sherman Antitrust Act ("Sherman Act"). All the while, Plaintiff never bothered to apply for a clerkship or even for admission to the New York bar.

Plaintiff's meritless RICO claims should be dismissed with prejudice. *First*, Plaintiff fails to plead a pattern of racketeering activity, as he has not pled any viable predicate offenses or continuity. *Second*, Plaintiff fails to allege a RICO enterprise. *Third*, Plaintiff fails to plead a RICO injury. *Fourth*, Plaintiff fails to plead any alleged RICO violation caused his failure to secure a clerkship or employment—and he cannot do so, as his own actions stand as intervening factors.

And *fifth*, his RICO conspiracy claims fail with the substantive RICO claims, and Plaintiff nevertheless has not pleaded an agreement supporting a conspiracy.

Plaintiff's antitrust claims are equally meritless and subject to dismissal with prejudice. *First*, Plaintiff fails to allege an antitrust injury. *Second*, Plaintiff fails to allege a properly-defined relevant market. *Third*, even if the "judicial clerkship" market was a properly-defined market, Plaintiff's own allegations show Defendants control less than 50% of that alleged market and therefore are insufficient to sustain a monopoly claim.

Accordingly, Plaintiff's claims should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    Parties

Plaintiff is a 2023 graduate of NYU Law. FAC ¶ 1. Professor Epstein is a professor at NYU Law and faculty advisor to both the NYU FedSoc and JLL. *Id.* ¶ 2. Defendants Mitchell Pallaki, Ajay Iyer, Zachary Garrett, William Weinberg, and Andrew Nelms are NYU Law graduates and former members of the NYU FedSoc (the "Student Defendants"). *Id.* ¶¶ 4-11.

### B.    Plaintiff's Allegations

Plaintiff's FAC centers on one core grievance: that despite cozying up to Professor Epstein, he was not gifted a Supreme Court clerkship, "a fast-track to the pinnacle of the American legal profession[.]" *Id.* ¶ 16. Instead, he claims, Defendants worked together to prevent Plaintiff from obtaining that clerkship.

#### 1.    Plaintiff's Allegations That Professor Epstein Controls Clerkships

Plaintiff has conjured a vast conspiracy with Professor Epstein as the "only game in town" for conservative NYU Law students hoping to clerk for right-leaning judges. *Id.* ¶ 43. In essence, he claims Professor Epstein has amassed "control over the staffing of an unrivaled number of federal clerkships" with conservative judges, to the point that these positions constitute "his private

2

property," an assertion with which the judges hiring clerks on Professor Epstein's *recommendation* would no doubt disagree. *Id.* ¶¶ 27, 34. Thus, all NYU Law students seeking clerkships with right-leaning judges, Plaintiff alleges, require Professor Epstein's blessing.

Plaintiff claims Professor Epstein wields this influence—his so-called "racket"—in three ways. *Id.* ¶ 29. Plaintiff alleges that Professor Epstein (1) despite not being a judge, has "control over federal judicial clerkships"; (2) controls unspecified "vast amounts of 'dark money' provided by large corporations and wealthy donors" in the form of student fellowships at conservative think tanks and institutes; and (3) uses students and young professionals as "grist for Epstein's mill" who "occupy the positions he controls" and "implement though the power of the Government of the United States, the worldview shared by him and his financiers." *Id.* ¶¶ 29, 31-32.

### 2.    Plaintiff's Allegations About the Relationship Between The Parties

Plaintiff alleges that the Student Defendants, who he refers to as the "NYU Crew,"[1] "serve[d] as the foot-soldiers of defendant Epstein on campus and seek to control and influence … to whom he doles out his favor, largesse and prized clerkship slots." *Id.* ¶ 42. Plaintiff alleges the Student Defendants both served and "manipulat[ed]" Professor Epstein "as a means to obtain" their own federal clerkships. *Id.* ¶ 43. Plaintiff further alleges that he too curried Professor Epstein's favor. He boasts that he shared "a genuine long-term intellectual interest in the scholarship and ideas of defendant Epstein" and "enjoyed a sincere relationship with [him]," even claiming Professor Epstein took "an instant appreciation of his talent" and anointing himself Professor Epstein's "intellectual successor" and "protégé." *Id*. ¶¶ 19, 46. However, the Student Defendants, he claims, sabotaged his favored status with Professor Epstein. *Id.* ¶ 130.

---

[1] The FAC defines the "NYU Crew" as "a group of NYU law students … who by engaging in racketeering activities, captured the NYU Federalist Society Chapter and [JLL], and maintain control over these entities." FAC ¶ 42.

### 3. Plaintiff's Allegations about Defendants' Supposed Misconduct

The FAC conjures a tale of how Plaintiff's jealous and conniving classmates targeted him, Professor Epstein's once-favored student, and how Professor Epstein mysteriously turned on him and made it his mission to destroy Plaintiff's career prospects. The vast majority of the conduct alleged in the FAC has nothing to do with Professor Epstein, and amounts, at most, to squabbling among law school classmates. The allegations pertaining to Professor Epstein are as follows:

On April 10, 2022, Plaintiff informed Professor Epstein that he was planning to spend his 3L year at a different law school. *Id.* ¶ 124. Plaintiff claims that Professor Epstein called plaintiff to "plead[]" with him to remain and "offered" him a "feeder" federal appellate clerkship, a "Supreme Court clerkship as available, a top position" on "[JLL] and to teach Property [and] Food and Drug Law." *Id.* ¶ 125. Professor Epstein then allegedly "ordered defendant Iyer" to invite Plaintiff to apply for the position of Senior Article Editor on the JLL. *Id.* ¶ 126. But while Plaintiff was allegedly on "the precipice of a federal appellate clerkship" arranged for him by Professor Epstein, Kirkland & Ellis LLP ("K&E") terminated him as a summer associate. *Id.* ¶ 24. Plaintiff alleges that Defendants Pallaki, Iyer, and Garrett then doctored posters and defamed him online, to the Federalist Society Student Division, and to Professor Epstein by claiming K&E fired him for sexual harassment and banned him from its building. *Id.* ¶¶ 24, 133-36.

Following Plaintiff's firing from K&E, Professor Epstein allegedly did an about-face. Plaintiff claims that during an August 9, 2022, telephone call, Professor Epstein informed Plaintiff he was revoking his "offer" of clerkships and a position on JLL. *Id.* ¶ 141.[2] Also during this call, Professor Epstein allegedly told Plaintiff of a "false complaint filed against" him and refused to exercise "his immense influence" to prevent a Title IX proceeding against Plaintiff. *Id.* ¶¶ 144,

---

[2] Notably, Plaintiff never alleges that he applied for or interviewed for a single clerkship nor made any other efforts to secure a clerkship, including by seeking a recommendation from another professor or contacting any judge.

214. He also claims Professor Epstein denied that anyone in the NYU FedSoc circulated the fake photographs and in a follow-up email, told Plaintiff, "I was responsible." *Id.* ¶¶ 144-45.

Although Professor Epstein informed Plaintiff that he would not recommend him for a clerkship, Plaintiff continued to harangue him over the ensuing months to determine who made and distributed the fake photographs. *Id.* ¶¶ 146-147, 161-171. On July 28, 2023, Plaintiff met Professor Epstein for lunch, and used the meeting as an excuse to demand Professor Epstein offer up information for his complaint in the related defamation action that he intended to file that day. *Id.* ¶ 153. Professor Epstein declined to do so and told Plaintiff he did not wish to be involved. *Id.* ¶¶ 153-157. Plaintiff, however, told Professor Epstein he was already involved and mocked his understanding of civil procedure. *Id.* ¶ 158. Plaintiff nevertheless filed the defamation complaint that day.

Earlier that year, on February 3, 2023, Plaintiff followed Professor Epstein to his subway stop, asking how he could improve his career prospects. *Id.* ¶ 148. In turn, Professor Epstein allegedly offered Plaintiff a paid fellowship at the Bradley Foundation. *Id.* Plaintiff turned this offer down. *Id.* ¶ 150.

C.    The FAC

Plaintiff filed his original complaint in this action on September 27, 2024. Dkt. No. 1. After the Student Defendants moved to dismiss and after Plaintiff filed a Notice of Appeal in the related action, Plaintiff filed this FAC on June 16, 2025. Dkt. No. 71. Plaintiff's nine-count FAC asserts claims under RICO and the Sherman Act against all Defendants: (1) a RICO claim under 18 U.S.C. § 1962(b); (2) a RICO claim under *id.* § 1962(c); (3) a RICO conspiracy claim under *id.* § 1962(d) based on *id.* § 1962(b); (4) a RICO conspiracy claim under *id.* § 1962(d) based on *id.* § 1962(c); (5) monopolization of the NYU judicial clerkship market; (6) attempted monopolization of the NYU judicial clerkship market; and unreasonable restraint of trade for (7) academic journal work,

(8) think tank work, and (9) clerkships. Plaintiff demands treble damages, declaratory relief, legal costs, and equitable relief.

## ARGUMENT[3]

The FAC fails to plausibly allege any of his nine RICO and antitrust claims. To survive dismissal under Rule 12(b)(6), a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right a relief above the speculative level[.]" *Ibrahim v. Pena*, 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).[4] Plaintiff's FAC fails at the starting gate and should be dismissed with prejudice.

## I.  PLAINTIFF FAILS TO STATE A RICO CLAIM

Plaintiffs "wielding RICO almost always miss the mark." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017). Courts carefully scrutinize civil RICO claims "given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013). Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Freund v. Lerner*, 2010 WL 3156037, at *6 (S.D.N.Y. Aug. 10, 2010). Plaintiff's

---

[3] Professor Epstein adopts and incorporates the arguments set forth in the motions to dismiss filed by the Student Defendants and Defendant Pallaki.

[4] While courts typically extend great consideration to *pro se* litigants, that solicitousness is not warranted where, as here, Plaintiff is a graduate of a prestigious law school, has passed the New York bar exam, and considers himself sufficiently qualified to merit a Supreme Court clerkship. *See Harbulak v. Suffolk Cnty.*, 654 F.2d 194, 198 (2d Cir. 1981) ("Harbulak is a lawyer and, therefore, he cannot claim the special consideration which courts customarily grant to pro se parties[.]").

RICO claims are exactly the type of baseless claims that should be "flush[ed] out" because he has not pled—and cannot plead—the essential elements of his claims. Accordingly, counts one through four should be dismissed with prejudice.

### A.    Plaintiff Fails to Plead a "Pattern" of Racketeering Activity

Plaintiff's RICO claims fail because the FAC does not allege a pattern of racketeering activity. A pattern of racketeering activity is essential to any RICO claim and requires a showing of at least two related predicate acts of racketeering activity within a ten-year period. *See* 18 U.S.C. §§ 1961(5), 1962(b)-(c). A RICO pattern is established by showing that the predicate acts "pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). Further, RICO requires showing "*each* defendant commit[ed] at least two predicate acts" that comprise the pattern of racketeering activity. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *11 (S.D.N.Y. Mar. 15, 1994). Here, the FAC fails to allege *any* RICO predicates or that those predicates constitute or pose a threat of continuous criminal activity.

### 1.    The FAC Fails to Allege Any RICO Predicates

The FAC alleges Professor Epstein committed the following predicate acts: wire fraud, extortion, money laundering, and witness tampering. FAC ¶¶ 213-14, 217. The FAC does not support any of these predicates.[5]

### a.    Plaintiff Cannot Plead Wire Fraud

Wire fraud requires "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.

---

[5] Plaintiff also purports to plead the predicate acts of "blackmail," obstruction of justice, and obstruction of state law enforcement. However, none of these predicate acts are alleged to have been performed by Professor Epstein. To the extent Plaintiff claims that Professor Epstein did perform these predicate acts, or ratified them, they fail for the reasons set forth in the Student Defendants' dismissal motions.

Supp. 3d 342, 362 (S.D.N.Y. 2014). Plaintiff wholly fails to allege a plausible wire fraud predicate act by Professor Epstein for multiple reasons.

*First*, Plaintiff fails to plead the alleged wire fraud was undertaken to "obtain[] money or property" or that he was "induced to part with anything of value as a result." *Kimm v. Lee*, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006). Instead, Plaintiff's wire fraud claim is based entirely on Professor Epstein's purported emailed and telephonic statement to Plaintiff that he—not anyone at the NYU FedSoc—was responsible for defaming Plaintiff. FAC ¶¶ 145, 213. But courts regularly dismiss wire fraud predicates where, as here, "the emails did not seek to defraud [plaintiff] out of money or property[,]" even if some misrepresentation is involved. *Santana v. Adler*, 2018 WL 2172699, at *5 (S.D.N.Y. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 2170299 (S.D.N.Y. May 10, 2018); *see also Azima v. Dechert LLP*, 2024 WL 4665106, at *3 (S.D.N.Y. Sept. 26, 2024) (dismissing wire fraud claim where plaintiffs failed to "allege an intent to obtain any victim's 'money or property'").

*Second*, Plaintiff fails to allege he relied upon any misstatement to his detriment; a basic requirement of any wire fraud predicate based on non-disclosure. *See THC Holdings Corp. v. Tishman*, 1996 WL 291881, at *4 (S.D.N.Y. May 31, 1996). Here, while Plaintiff self-servingly avers that he relied on Professor Epstein not telling him who "defam[ed]" him, FAC ¶ 213, he contradicts that claim by affirmatively pleading he did not believe Professor Epstein and accordingly continued to badger him over the ensuing months. *Id.* ¶¶ 146-170. Indeed, Plaintiff filed his since-dismissed defamation suit demonstrating he did *not* detrimentally rely on Professor Epstein's email.

*Third*, Plaintiff's allegations do not satisfy wire fraud's interstate requirement. Fatally, in violation of Rule 9(b), Plaintiff does not plead *where* he or Professor Epstein transmitted or

received the phone calls and emails at issue and does not even plead that the communications were interstate. *See Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *5, n.1 (E.D.N.Y. Mar. 31, 2009) (wire fraud claims "legally deficient because they fail to allege that the relevant wire communications were of an interstate nature."). Nor can it be inferred, based on Plaintiff's then-New Jersey residence, that the communications were interstate since Plaintiff attended law school in New York City and the FAC suggests he spent much of his time outside of class in New York. *See, e.g.*, FAC ¶¶ 117, 160, 165.

**Fourth**, at most, Plaintiff claims "a collective effort to damage [plaintiff's] reputation[,]" which is insufficient to plead wire fraud, as even false statements must be "alleged to have been part of a scheme to obtain money or property" to be actionable under the federal anti-fraud statutes. *Black v. Ganieva*, 619 F. Supp. 3d 309, 344 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023); *see also Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *4 (S.D.N.Y. May 30, 2020) ("[I]t is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations.") (citation omitted).

Plaintiff has failed to plead any wire fraud predicate acts.

### b.    Plaintiff Cannot Plead Extortion

Plaintiff likewise fails to allege an extortion predicate act. A predicate RICO extortion offense requires either (1) acts or threats involving extortion which is punishable by imprisonment under state law for more than one year or (2) an act indictable under the Hobbs Act. *See United States v. Caggiano*, 2014 WL 104968, at *1 (W.D.N.Y. Jan. 9, 2014) (citing 18 U.S.C. § 1951). The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *Entretelas Americanas S.A. v. Soler*, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F. App'x 601 (2d Cir. 2020), *as amended* (Jan. 7, 2021).

Here, the FAC fails to allege Professor Epstein obtained or attempted to obtain something tangible from Plaintiff. *See Spiteri*, 2013 WL 4806960, at *48 (dismissing extortion claim where no allegation defendants "received or attempted to receive something tangible" from plaintiff). Rather, Plaintiff alleges Professor Epstein refused to put his thumb on the scale in Plaintiff's favor in an official Title IX proceeding for the conclusory purposes of "cover[ing] up his fraud, disincentiviz[ing] the plaintiff from further investigation and obstruct[ing] justice." FAC ¶ 214. This simply does not constitute extortion under the Hobbs Act or otherwise.[6]

Even had Plaintiff alleged Professor Epstein had refused to intervene on Plaintiff's behalf in the Title IX proceeding to obtain Plaintiff's property, he fails to allege that Professor Epstein acted through "wrongful use of actual or threatened force, violence, or fear or under color of official right." *Park S. Associates v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), *aff'd*, 800 F.2d 1128 (2d Cir. 1986). Plaintiff does not allege Professor Epstein initiated, encouraged, or otherwise participated in this proceeding—only that he refused to obstruct it. FAC ¶ 214. A refusal to act *unlawfully* is not extortionate. Nor does Plaintiff's purported "fear" of expulsion or the Title IX proceeding salvage his claim, as expulsion from a community or fear of legal or disciplinary action (like a Title IX proceeding) is not the type of "fear" required for RICO predicate extortion. *See, e.g.*, *Kimm*, 2005 WL 89386, at *6. In sum, Plaintiff has failed to allege an extortion predicate.

### c.    Plaintiff Cannot Plead Money Laundering

Plaintiff's allegations that Professor Epstein offered him a paid fellowship do not plead money laundering. To state a money laundering RICO predicate, a plaintiff must plead "(1) the

---

[6] To the extent Plaintiff relies on state extortion statutes (he does not so specify), such statutes can only qualify as a predicate offense under RICO if they "fit the traditional definition of extortion," *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007), which requires "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). Thus, any state extortion predicate fails for the same reason as under the Hobbs Act.

Defendant[] conducted a financial transaction in interstate commerce, (2) with knowledge that the property involved in the transaction represented unlawful activity, (3) with the transaction involving the proceeds of specified unlawful activity, and (4) with the purpose of concealing or disguising the nature, location, source, ownership or control of the illegally acquired proceeds." *Schlesinger v. Schlesinger*, 2007 WL 9706975, at *13 (E.D.N.Y. Nov. 15, 2007). Plaintiff's money laundering allegations fall far short of stating a RICO predicate.

*First*, Plaintiff does not allege the money offered was derived from unlawful activity or constituted illegally acquired proceeds. *See Entretelas Americanas*, 2020 WL 9815186, at *9 (rejecting money laundering claim where complaint failed to allege how monies were proceeds of specified unlawful activity). Instead, Plaintiff vaguely alleges that Professor Epstein "controls … captured enterprises … and … engages in money laundering to conceal the origins of funds which are not socially or politically palatable to many" and access "to dark money" and that Professor Epstein "offered the plaintiff money from a slush fund." FAC ¶¶ 27, 31, 217. These threadbare insinuations that do not even try to aver that the monies were proceeds of any identified illegal activities cannot support an inference of any statutory violation.

*Second*, Plaintiff fails to plead Defendants conducted a financial transaction in interstate commerce. *Schlesinger*, 2007 WL 9706975, at *13. Not only is there no allegation of an interstate financial transaction (Plaintiff alleges the purported offer was made while both were in New York, FAC ¶ 148), there is no transaction at all since Plaintiff pleads he "refused" the fellowship and money allegedly offered. FAC ¶ 150. Plaintiff has not pled a money laundering predicate.

### d.    Plaintiff Cannot Plead Witness Tampering

Last, Plaintiff fails to plead Professor Epstein engaged in a witness tampering RICO predicate. Plaintiff broadly asserts that the NYU FedSoc experienced a down year in placing students in judicial clerkships, because Professor Epstein was "engag[ing] in a collective

punishment through boycott of NYU students, denying them all of his slots, as a show of power and a deterrence against any testimony as to his conduct or the true nature of affairs in the organization." FAC ¶ 185; *see also id.* ¶¶ 184, 216. But Plaintiff does not allege Professor Epstein refused to recommend students (the extent of his power), he does not identify any students likely to have information relevant to this proceeding or likely to testify, and he fails to plead Professor Epstein acted with the specific intent to influence or delay any witness's testimony or cause that witness to withhold testimony. 18 U.S.C. § 1512(b). *See Conway v. Conway*, 2019 WL 1331624, at *7 (S.D.N.Y. Mar. 25, 2019). Put simply, Plaintiff's conclusory allegations are implausible and cannot make out a witness tampering RICO predicate.

Plaintiff's failure to plead any RICO predicates—let alone the minimum two predicates—mandates dismissal of his RICO claims against Professor Epstein.

### 2.    The FAC Fails To Allege Continuity

Even if Plaintiff alleged two RICO predicate acts (he did not), his RICO claims still fail because the FAC fails to plead continuity in the alleged racketeering activity. A RICO plaintiff "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *Chester Park View, LLC v. Schlesinger*, 2024 WL 2785140, at *7 (S.D.N.Y. May 29, 2024). "Typically, courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern." *Id.* Plaintiff fails to plead either type of continuity.

**Closed-Ended Continuity.** "To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). The relevant period to be measured is

when the "RICO predicate activity occurred, **not** the time during which the underlying scheme operated, or the underlying dispute took place." *Id.* (emphasis added). Furthermore, "the Second Circuit has never held a period of less than two years to constitute closed-ended continuity." *Chester Park*, 2024 WL 2785140, at *8.

Plaintiff identifies four so-called "predicate acts" by Professor Epstein: wire fraud, extortion, money laundering, and witness tampering. Plaintiff alleges that both wire fraud and extortion occurred on August 9, 2022. FAC ¶¶ 213-214. He alleges that the "money laundering" occurred on February 3, 2023. *Id.* ¶ 217. He pleads that Professor Epstein "tamper[ed] with witnesses" through NYU's 2023/2024 academic year, which ended on May 15, 2024.[7] *Id.* ¶ 216. But these alleged predicate acts, running from August 9, 2022, until May 15, 2024, took place over a period of less than two years, a time span that is too short under Second Circuit precedent to allow for close-ended continuity. *See Chester Park*, 2024 WL 2785140, at *8. Nor is there any reason to depart from the general Second Circuit rule here, where the alleged scheme is relatively simple and involved only a limited number of alleged perpetrators and a single "victim" in Plaintiff. *See One World, LLC v. Onoufriadis*, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021) (declining to depart from two-year minimum for close-ended continuity where scheme lasted less than two years, involved discrete number of predicate acts, and one victim). And to the extent Plaintiff asserts his conclusory allegation that Professor Epstein "ratified" the Student Defendants' earlier actions so as to expand the closed-ended period, he fails to plead any facts as to how

---

[7] This Court may take judicial notice that according to its academic calendar published online, NYU Law's commencement in 2024 occurred on May 15, 2024, marking the end of the 2023/2024 academic year. https://www.law.nyu.edu/academicservices/academiccalendar/2023-2024-academic-calendar. *See Flannery v. County of Niagara*, 763 F. Supp. 3d 364, 430 (W.D.N.Y. 2025) (taking judicial notice of facts established by calendar, "as the accuracy of a calendar cannot be reasonably questioned"); *Vlahos v. Schroeffel*, 2006 WL 544044, at *5 (E.D.N.Y. Mar. 6, 2006) (taking judicial notice of information about academic program on university website).

Professor Epstein ratified those actions other than the vague claim that he "bestowed reward upon the perpetrators." FAC ¶ 25.  This is plainly not enough.

      **Open-Ended Continuity.** Plaintiff likewise has not alleged open-ended continuity, because he has not pled "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Chester Park*, 2024 WL 2785140, at *10 (citation omitted). "Such a threat exists only: (1) where the enterprise itself is engaged in primarily criminal conduct or, (2) the predicate acts alleged are the regular way of conducting a legitimate business or, (3) the nature of the predicate acts themselves imply a threat of continuing criminal activity." *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 150 (E.D.N.Y. 2001). Further, "[o]pen-ended continuity may only be evaluated based on the predicate acts that Plaintiffs adequately plead in the complaint." *Chester Park*, 2024 WL 2785140, at *11. Plaintiff cannot satisfy any of the necessary factors.

      ***First***, far from alleging that the allegedly "captured" enterprises (NYU FedSoc and JLL) engaged in primarily criminal conduct, Plaintiff pleads that they exist for the "legitimate purposes" of "foster[ing] intellectual diversity and debate at the law school," and "publishing in areas relating to freedom, limited government and the rule of law." FAC ¶¶ 48, 50. ***Second***, Plaintiff has not pled the alleged predicate acts were either NYU FedSoc's or JLL's regular way of conducting business. ***Third***, Professor Epstein's alleged predicate acts of wire fraud, extortion, and money laundering were inherently one-off communications with Plaintiff that are insufficient to establish open-ended continuity. *Id.* ¶¶ 213-214, 217. And Plaintiff pleads that Professor Epstein's purported witness tampering—*i.e.*, his alleged boycott of NYU Law students for clerkships—was circumscribed to the 2023/2024 academic year. *Id.* ¶ 216. Plaintiff fails to plead open-ended continuity.

### B.    Plaintiff Fails to Plead the Existence of a RICO Enterprise

Plaintiff's RICO claims against Professor Epstein also fail because he has not alleged the existence of any RICO enterprise or that Professor Epstein was part of one. A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff baldly claims the NYU FedSoc and JLL are "captured enterprises" controlled by Professor Epstein. *See*, *e.g.*, FAC ¶¶ 205, 208-209, 213, 217, 224, 232. But mere "labels and conclusions" are insufficient.

Further, the FAC does not and cannot plausibly allege that Professor Epstein and the Student Defendants shared a common purpose, an essential element of any RICO enterprise. "[F]or an association of individuals to satisfy the enterprise requirement," the Second Circuit has held, "the individuals must share a common purpose to engage in fraudulent course of conduct and *work together* to achieve such purposes." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004). "A separate purpose or objective that does not involve illegal conduct will not do." *Black*, 619 F. Supp. at 331. Because of this requirement, "[i]ndividuals or entit[i]es that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 351 (S.D.N.Y. 2010).

Plaintiff's sole allegation regarding the purpose of these supposed enterprises is that the alleged "racketeering activities" were taken "for the purpose of[] violations of the anti-trust laws of the United States." FAC ¶¶ 202, 220, 227. Not only is the antitrust claim without legal merit, *see infra* § II, but Plaintiff pleads no facts showing that all Defendants were "working together to achieve" Professor Epstein's so-called control over the "clerkship market." *Malester v. Adamo*, 2010 WL 5065865, at *4 (S.D.N.Y. Dec. 8, 2010). At best, Plaintiff pleads the Student Defendants sought to impress their influential professor to advance their own career prospects, and Professor

Epstein, separately, sought to influence public policy to conform with his views. FAC ¶¶ 42-45, 27, 32. These distinct self-interests, however, do not qualify as a "common purpose" under RICO, which requires the defendants act "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014). Absent a common purpose, Plaintiff cannot "satisfy [his] pleading requirement by stringing together independent acts by different entities and claim it was a joint undertaking for an illegitimate purpose." *Malester*, 2010 WL 5065865, at *4 (citing *Frangipani v. HBO*, 2010 WL 1253609, at *6 (S.D.N.Y. 2010)).[8]

## C.    Plaintiff Fails to Plead a RICO Injury

The RICO claims should also be dismissed because Plaintiff has not alleged injuries to "his business or property" stemming from any of the purported predicate acts. *See* 18 U.S.C. § 1964(c). "[A] showing of 'injury' requires proof of *concrete financial loss*." *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2020 WL 9209278, at *3 (E.D.N.Y. Dec. 14, 2020), *aff'd*, 2022 WL 480475 (2d Cir. Feb. 17, 2022). A complaint must "identify specific instances of lost business." *Id.* at *12. "'[C]onclusory allegations of injury to pecuniary interest' will not suffice." *Beter v. Murdoch*, 2018 WL 3323162, at *5 (S.D.N.Y. June 22, 2018). Importantly, a "RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Plaintiff's only attempts at pleading pecuniary injury are vague conclusions that he suffered "injury to his business and property" and by "incurring legal costs" in the instant action. FAC ¶¶

---

[8] Nor could Plaintiff state a common purpose by alleging Defendants all disliked him or separately acted against him since "RICO's common purpose requirement demands more than general synchronicity or shared enmity." *Black*, 619 F. Supp. 3d at 333.

218-219. But these threadbare allegations are not enough, especially where Plaintiff makes no effort to quantify his "injury." *Nassiri v. Craumer*, 1996 WL 209985, at *3 (S.D.N.Y. Apr. 30, 1996). Further, "legal costs" in an ongoing case are insufficiently "clear and definite" to state an injury. *Glob. Merch. Cash Inc. v. Rome-Aire Servs., Inc.*, 2024 WL 4515654, at *10 (E.D.N.Y. Oct. 17, 2024). Nor do Plaintiff's legal costs here bear any causal nexus to Professor Epstein's alleged predicate acts. *Kimm*, 196 F. App'x at 16 (legal costs could not state RICO injury; even if defendant's conduct caused legal costs, they were not "foreseeable natural consequence sufficient for proximate causation").

The primary injury Plaintiff alleges here—his inability to secure a U.S. Supreme Court clerkship or other legal employment—is far too speculative to be cognizable under RICO. Plaintiff never avers he secured then lost a clerkship, let alone one with a U.S. Court of Appeals or the U.S. Supreme Court. At most, Plaintiff pleads he expected to receive a "Supreme Court clerkship *as available*." FAC ¶ 125 (emphasis added). But "a mere 'expectation' cannot constitute 'business or property' under RICO." *Villoldo v. BNP Paribas S.A.*, 648 F. App'x 53, 55 (2d Cir. 2016). Similarly, Plaintiff cannot satisfy the injury requirement by averring his inability to find legal employment elsewhere. "[Allegations that plaintiff] has not been able to find employment reflective of [his] level of education and experience ... are too speculative to constitute an injury to business or property." *Pack v. Parker Jewish Inst. for Health Care & Rehab.*, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014). Nor can alleged damage to Plaintiff's reputation that may have hindered his future employment salvage his claims. "[M]ere injury to character, business reputation … are not actionable under civil RICO." *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998); *see also Kimm*, 196 F. App'x at 16 ("the generalized reputational harms

alleged, including the risk of future lost business commissions, are too speculative to constitute an injury to business or property").[9]

### D.    Plaintiff Fails to Plead Causation

Plaintiff's RICO claims also fail because he has not alleged any RICO violation **caused** him injury. Plaintiff must establish "not only that the defendant[s]' alleged RICO violation was the 'but for' or cause-in-fact of [his] injury, but also that the violation was the legal or proximate cause." *THC Holdings*, 1996 WL 291881, at *5. RICO causation must be pled with particularity and plausibility. *Entretelas Americanas*, 2020 WL 9815186, at *8-9. "[E]ven at the pleading stage, civil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury." *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019). Finally, "[a] plaintiff fails to establish a RICO injury where the injury flowed from the plaintiffs' voluntary decisions." *Nygard v. Bacon*, 2021 WL 4926078, at *1 (S.D.N.Y. Oct. 21, 2021).

Here, none of the deficient alleged predicate acts proximately or actually caused Plaintiff's purported injury of not receiving a U.S. Supreme Court clerkship or other legal employment. Even if he *could* establish the predicate acts—he cannot—Plaintiff's own "voluntary decisions" stand as intervening factors in his failure to secure a clerkship or legal employment. *Id*. Plaintiff made no independent effort to secure a clerkship. He does not allege that he submitted a single clerkship application to a judge at any level. Likewise, his midsummer termination as a summer associate at K&E for unidentified misconduct makes it even more implausible that he would be considered for

---

[9] Plaintiff's Section 1962(b) claim also fails because he has not plead a distinct "acquisition injury."  As Plaintiff's RICO claim appears to be premised on the alleged takeover of the legitimate NYU FedSoc and JLL, he must allege an injury "caused by the acquisition or maintenance of control [over the enterprise]," separate and apart from the injuries caused by the racketeering activity or predicate acts. *In re Adelphia Commc'ns Corp.*, 2007 WL 2403553, at *15 (Bankr. S.D.N.Y. Aug. 17, 2007). The FAC, however, only alleges injuries coextensive with alleged injuries arising from the commission of alleged predicate acts, dooming his Section 1962(b) claims.

a highly-competitive Supreme Court clerkship. Further, Plaintiff admitted that he never even sought admission to the bar, making his chances of securing a clerkship or other legal employment even more remote. *See Rapaport v. Iyer*, No. 1:23-cv-6709 (S.D.N.Y. May 24, 2024) (Dkt. No. 38) ¶ 14. At bottom, "[n]umerous intervening factors," including Plaintiff's own missteps, account for his "lack of success." *Doe*, 385 F. Supp. 3d at 280. "These factors, contributing in whole or part to Plaintiff['s] losses, make the question of Defendants' responsibility the sort of 'intricate, uncertain inquir[y]' that the proximate cause requirement is intended to avert." *Id.* Accordingly, the RICO claims fail.

### E.    Plaintiff Fails to Plead a RICO Conspiracy

Plaintiff's RICO conspiracy claim should also be dismissed. Initially, the conspiracy claim fails because, as set forth above, Plaintiff has not pled a substantive RICO violation. *See*, *e.g.*, *First Cap.*, 385 F.3d at 182. But even if he had, Plaintiff's failure to allege that Professor Epstein participated in "an agreement to violate RICO's substantive provisions" separately requires dismissal. *Alix v. McKinsey & Co.*, 2023 WL 5344892, at *4 (S.D.N.Y. Aug. 18, 2023); *Onoufriadis*, 2021 WL 4452070, at *1. Plaintiff never attempts to plead an agreement between Professor Epstein or any other Defendant to violate RICO. Rather, the FAC is clear that the individual parties undertook any predicate acts independently. At most, he vaguely pleads Professor Epstein "ratified" the other Defendants' actions and "cover[ed] up" for them (FAC ¶ 25), but this cannot satisfy his pleading burden. This failure to plausibly allege an agreement is fatal. This claim too must be dismissed.

## II.  PLAINTIFF FAILS TO STATE CLAIMS UNDER FEDERAL ANTITRUST LAWS

None of Plaintiff's five federal antitrust-based claims, even read in their most favorable light, ***contain a single fact*** that remotely touches on ***the most important element of any antitrust***

*claim*:  an injury to trade or commerce (*i.e.*, an antitrust injury).[10]  Instead, Plaintiff's allegations are no more than a collection of gripes for not being recommended for a judicial clerkship and for not being chosen to participate in certain law school activities. These are not antitrust injuries as they do not involve an injury to trade or commerce. Given the nature of his claims, it is not surprising that Plaintiff also fails to plead any other facts necessary to state a claim for relief under federal antitrust laws. Accordingly, counts five through nine of the FAC should be dismissed with prejudice. [11]

### A.    Plaintiff Fails to Allege an Antitrust Injury

The Court's analysis of Plaintiff's antitrust claims can begin and end with its observation that the FAC fails to allege any facts that demonstrate that his injuries are in "restraint of trade or commerce" as expressly required by statute and case law. *See* Sherman Act §§ 1 & 2 (expressly applying to restraints "in trade or commerce"); *see also Apex Hosiery Co. v. Leader*, 310 U.S. 469, 501, 513 (1940) (no violation of Sherman Act where alleged conspiracy did not restrain trade or commerce); *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018) ("Competition is at the heart of the antitrust laws; it is only anticompetitive conduct, or 'a competition-*reducing*

---

[10] Plaintiff's antitrust claims should be dismissed for the additional reason that the FAC fails to allege any facts to show that *Defendants' alleged conduct* affects interstate commerce. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194 (1974) (It is well-established that "the jurisdictional reach of [the Sherman Act] … is keyed directly to effects on interstate markets and the interstate flow of goods."); *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 926 (2d Cir. 1983) (affirming dismissal of antitrust complaint based on physician's denial of hospital privileges where plaintiff did not allege defendant's conduct had "'as a matter of practical economics' … a not insubstantial effect on the interstate commerce involved").

[11] Plaintiff styles his antitrust claims pursuant to the Sherman Act. FAC ¶ 13. However, even if the Court construes the FAC to allege Donnelly Act claims under New York State law—and to be clear, he does not so plead—those claims fail for the same reasons his Sherman Act claims fail because the same analysis applies to both Acts. *See, e.g., SL-x IP S.a.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 2620041, at *4, n.4 (2d Cir. Mar. 24, 2023) (Donnelly Act modeled on Sherman Act and "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result."). Thus, the Donnelly Act also requires injury to business, trade or commerce. NY Gen. Bus. Law § 340 (Donnelly Act) (requiring injury to "any business, trade or commerce"); *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 667 (W.D.N.Y. 2010) (dismissing with prejudice Donnelly Act claim where complaint failed to allege sufficient facts to identify properly-defined relevant product market and how alleged conduct "impacted or restrained trade" in relevant market).

aspect or effect of the defendant's behavior,' that antitrust laws seek to curtail.") (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)) (dismissing complaint; antitrust injury is required even for *per se* violations). An antitrust injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The injury must therefore relate to competition in commerce. *Id.*[12]

Thus, for example, in *Johnson v. Commission on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017), the D.C. Circuit affirmed the dismissal of Sherman Act claims brought by presidential and vice-presidential candidates who asserted conspiracy, monopolization, and attempted monopolization claims arising out of their exclusion from nationally televised general-election debates. They alleged that they were excluded pursuant to an agreement between the Obama for America and Romney for President campaigns. *Id.* at 978. In affirming the dismissal of their antitrust claims, the Court found that "neither the business of conducting the government nor the holding of a political office constitutes 'trade or commerce' within the meaning of the Sherman Act." *Id.* at 983. The Court concluded: "The injuries Plaintiffs claim are simply not those contemplated by the antitrust laws." *Id.*

Here, Plaintiff's antitrust claims are comprised of nothing more than a story of hurt feelings and perceived academic snubs: (1) a so-called NYU Crew sabotaged his goal of becoming a federal appellate and Supreme Court clerk by falsely maligning him and Professor Epstein somehow

---

[12] For example, in *Brunswick*, there was no antitrust injury where plaintiffs alleged defendant's acquisition of certain bowling centers that were going out of business caused plaintiffs' loss of income. Although the court accepted plaintiffs' allegation that it would have captured additional business but for defendant's acquisition, the court nevertheless dismissed the complaint because the alleged injury was not caused by a loss of competition. In contrast, examples of injuries that flow from the anticompetitive consequences of antitrust violations include consumers paying higher prices because of a defendant's illegal conspiracy to fix prices, consumers paying higher prices because of a defendant's exclusionary conduct, or consumers having fewer options because of a defendant's illegal conspiracy to exclude a competitor. 429 U.S. 477.

"ratified" these actions, FAC ¶¶ 24-25; (2) this same NYU Crew maliciously orchestrated his removal from the NYU FedSoc, FAC ¶ 76; (3) Professor Epstein allegedly blocked his candidacy for Senior Article Editor of JLL based on a series of false accusations made by the NYU Crew, FAC ¶¶ 139-141; and (4) Professor Epstein somehow impeded his legal career, FAC ¶ 177.

Even if all these wild and implausible allegations were true—they are not—they do not demonstrate the requisite injury to competition that forms the critical basis to establish an antitrust claim. *Cf. Palladino v. JPMorgan Chase & Co.*, 761 F. Supp. 3d 521, 539 (E.D.N.Y. 2024) ("The loss of a job is not the type of injury that the anti-trust laws were designed to prevent."). Thus, Plaintiff's claims fail to allege that Defendants' actions had a substantial anticompetitive effect. *See Brunswick*, 429 U.S. at 489 (requiring antitrust injury reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation).

Plaintiff's failure to allege an antitrust injury is sufficient grounds for this Court to dismiss all five of his antitrust claims as a matter of law. *See John Wiley & Sons, Inc. v. Shumacher*, 2010 WL 103886, at *5 (S.D.N.Y. Jan. 4, 2010) (dismissing antitrust claims for lack of antitrust injury); *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 270 (2d Cir. 1990) (same). It should do so.

### B.  Plaintiff Fails to Define a Relevant Market

Even if the Court reads the FAC most generously to find a sufficiently pled antitrust injury, the antitrust claims must nevertheless be dismissed because they each fail to contain another essential element: a properly-defined relevant market. Claims brought under Sections 1 and 2 of the Sherman Act each require a properly-defined relevant market. *See*, *e.g.*, *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105, 111 (2d Cir. 2002) ("it is necessary to define the relevant product" alleged to be monopolized (Section 2); and conspiracy claims under the rule of reason require "a showing of injury to competition in the relevant market" (Section 1)); *In re: Inclusive Access Course Materials Antitr. Litig.*, 2021 WL 2419528, at *6 (S.D.N.Y. June 14, 2021) ("To survive

a motion to dismiss, a Sherman Act claim must allege an antitrust injury, define a relevant market, and plausibly allege conduct in violation of the antitrust laws.") (citing *Concord Assocs. L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016)). Plaintiff's inability to plead a relevant market provides another reason to dismiss his claims with prejudice.

### 1.    Plaintiff Fails to Allege a Properly-Defined Relevant Market for his Monopoly or Attempted Monopoly Claims

A claim for unlawful monopoly requires Plaintiff to allege facts that demonstrate Defendants (i) possess a monopoly (ii) in a properly-defined relevant market (*i.e.*, product market and geographic market) and (iii) willful acquisition or maintenance of monopoly power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962) (requiring antitrust claims to contain both a relevant product market and geographic market); *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 227 (2d Cir. 1999) (plaintiff must allege a relevant market, which is an "'area of effective competition' within which the defendant operates"). Merely possessing monopoly power does not violate antitrust law. *Grinnell*, 384 U.S. at 570-71. Courts examine the same factors when examining market power in both an attempted monopolization claim as they do in examining monopoly power, including evidence of defendant's market share.[13] *Natsource LLC v. GFI Grp., Inc.*, 332 F. Supp. 2d 626, 633 (S.D.N.Y. 2004) ("[t]he Second Circuit has consistently interpreted both monopoly and the attempt to monopolize as requiring some measure of market power" and analyzing market share) (citations omitted).

---

[13] Plaintiff's attempted monopolization claim fails for additional reasons. To establish a claim for attempted monopolization, Plaintiff must allege "(1) that [Defendant] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 266 (2d Cir. 2001). Plaintiff fails to allege any facts demonstrating predatory or anticompetitive conduct or a specific intent to monopolize (*i.e.*, "something more than an intent to compete vigorously," *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993)). Moreover, as discussed *infra* at n.14, even accepting Plaintiff's faulty product market definition, Defendants are far from achieving a market share that is anywhere close to a monopoly.

Here, Plaintiff asserts only a conclusory allegation of an undefined "judicial clerkship market as flowing through [NYU]." FAC ¶ 245. Plaintiff's make-believe "judicial clerkship market" is not a proper relevant market for antitrust purposes because he fails to allege how such market exists in trade or commerce. *See Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) (dismissing antitrust claims for failure to define proper relevant product market).

Although Plaintiff's imaginary "judicial clerkship market" is absurd on its face, one of the most glaring reasons it fails is because, while Professor Epstein's recommendations of certain qualified law students to clerkships allegedly carries significant weight, there is no allegation that he has any ability to actually *hire* law students as law clerks. Put differently, it is the judges, not Professor Epstein, who decide whether to hire a law clerk candidate. Thus, even if the Court accepts the existence of a "judicial clerkship market," Professor Epstein does not determine who would be included in it. Moreover, Professor Epstein's credibility depends on his exercise of discretion in the candidates that he chooses to recommend. While Plaintiff has made clear that he sought and valued Professor Epstein's recommendation for a federal clerkship, and was disappointed not to receive such a recommendation, there is no allegation that Professor Epstein did or could have prevented Plaintiff from soliciting other recommendations or avenues to pursue a clerkship. Compounding these omissions, Plaintiff also fails to allege that he even applied for a judicial clerkship. Thus, Plaintiff's focus on Professor Epstein's alleged outsized influence on recommending law students to federal clerkships is misplaced and dooms his monopolization and attempted monopolization theories.[14]

---

[14] Even if this Court finds that Plaintiff adequately alleges a "judicial clerkship market," Plaintiff's own allegations show that Defendants possess less than 50% of that alleged market, which is insufficient to sustain a monopoly claim. *See, e.g., Tops Mkts.*, 142 F.3d at 99 ("a market share below 50% is rarely evidence of monopoly power") (citations omitted); *Davis & Co. Auto Parts v. Allied Corp.*, 651 F. Supp. 198 (S.D.N.Y. 1986) (plaintiff failed to establish

### 2. Plaintiff Fails to Allege a Properly-Defined Market for his Unreasonable Restraints of Trade Claims

Last, Plaintiff's three "unreasonable restraints of trade claims" fail as a matter of law because he fails to allege an adverse effect on competition as a whole *in any relevant market*. Alleging harm as an individual competitor will not suffice. *Tops Mkts.*, 142 F.3d at 96. Under the Sherman Act, "the relevant market is the 'area of effective competition' within which the defendant operates." *Concord*, 817 F.3d at 52; *In re Inclusive Access*, 2021 WL 2419528, at * 11. The FAC contains only conclusory allegations that Professor Epstein and the other Defendants unreasonably restrained trade by organizing a boycott meant to prevent Plaintiff from engaging in undefined markets for "academic journal work"; "think tank work"; and "clerkships." FAC ¶¶ 257-267. This Court would search in vain for any allegations in the FAC that even attempt to (much less actually) define a relevant market for "academic journal work," "think tank work," or "clerkships." These are fictional markets with no real meaning, much less commercial relevance. Plaintiff's claims for an unreasonable restraint of trade should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) as alleged against Defendant Professor Epstein.

Dated: July 15, 2025                    Respectfully submitted,

                                        */s/ Jeremy Chase*
                                        Jeremy Chase
                                        Gerald Stein
                                        Nimra H. Azmi
                                        DAVIS WRIGHT TREMAINE LLP

---

likelihood of success because it did not prove defendant held monopoly power where defendant's share of relevant national market was only 14.9%). Here, Plaintiff alleges Professor Epstein's control of all Supreme Court clerkships constitutes 12.5% and his control of total District and Circuit comprises 5.26% of the national market. *See* FAC at Appx. A. Both figures fall far below 50% and therefore, as a matter of law cannot establish any monopoly power from which Defendants could control competition or leverage the "market." *PepsiCo*, 315 F.3d at 109 ("Absent additional evidence, such as an ability to control prices or exclude competition, a 64 percent market share is insufficient to infer monopoly power."). Consequently, Plaintiff's monopolization claim should be dismissed with prejudice.

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:         (212) 489-8340
jeremychase@dwt.com
geraldstein@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendant*
*Professor Richard A. Epstein*

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 8,747 words.

I certify under penalty of perjury that the foregoing is true and correct.


Dated: July 15, 2025
      New York, NY                    *_/s/ Jeremy Chase_*
                                        Jeremy Chase