UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

                    Plaintiff,

        -against-                                      Case No.: 1:24-cv-07439 (JGLC)

RICHARD ALLEN EPSTEIN, et al.,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
AJAY IYER, ZACHARY GARRETT, WILLIAM WEINBERG, AND ANDREW
NELMS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.   Factual background ............................................................................................... 2

    B.   Procedural background ......................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.    The Civil RICO Claims Fail. ........................................................................................ 4

    A.   Rapaport fails to allege a substantive RICO claim. ............................................. 5

    B.   Rapaport's alleged injuries do not support a RICO claim. ................................. 15

    C.   Rapaport has not properly alleged causation. ...................................................... 17

II.   The Antitrust Claims Fail .......................................................................................... 19

    A.   Rapaport fails to allege actual or attempted monopoly power. ........................... 20

    B.   Rapaport fails to allege anticompetitive conduct in the relevant market............. 21

    C.   Rapaport fails to allege any antitrust injury......................................................... 23

    D.   Rapaport fails to allege any restraint on trade. .................................................... 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Aramony v. United Way of Am.*,
  969 F. Supp. 226 (S.D.N.Y. 1997) ........................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 4

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ............................................................................... 23

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
  909 F. Supp. 162 (S.D.N.Y. 1995) ......................................................... 21

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) ........................................................... 11, 17

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011) ..................................................... 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 4, 16, 17, 21, 24

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ............................................................................... 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ......................................................................... 22, 23

*Cap. Imaging Assocs. P.C. v. Mohawk Valley Med. Assocs., Inc.*,
  996 F.2d 537 (2d Cir. 1993) ............................................................. 20, 24

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ................................................................... 12

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
  587 F.App'x 663 (2d Cir. 2014) ................................................................ 6

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018) ..................................................................... 16

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) ................................................................... 14

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*,
  902 F.2d 174 (2d Cir. 1990) ................................................................... 21

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
  129 F.3d 240 (2d Cir. 1997) ................................................................... 24

*Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
  612 F. Supp. 2d 330 (S.D.N.Y. 2009) ..................................................... 21

*FCC v. Am. Broad. Co.*,
  347 U.S. 284 (1954) ............................................................................... 15

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ................................................................. 5, 6, 12, 13, 14

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013) ............................................................................. 23

*Grace Int'l Assembly of God v. Festa*,
   797 F.App'x 603 (2d Cir. 2019) ....................................................................... 13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ........................................................................... 13, 14, 15

*Hecht v. Com. Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990) ....................................................................... 15, 16, 17

*In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019) ................................................................. 23

*In re Mexican Gov't Bonds Antitrust Litig.*,
   412 F. Supp. 3d 380 (S.D.N.Y. 2019) ................................................................. 22

*In re Tether & Bitfinex Crypto Asset Litig.*,
   576 F. Supp. 3d 55 (S.D.N.Y. 2021) ................................................................. 24

*Irvin Indus., Inc. v. Goodyear Aerospace Corp.*,
   974 F.2d 241 (2d Cir. 1992) ............................................................................. 19

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
   61 F.3d 123 (2d Cir. 1995) ............................................................................. 24

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542 (S.D.N.Y. 2014) ............................................................. 15, 16

*Kim v. Chang Hoon Lee & Champ, Inc.*,
   196 F.App'x 14 (2d Cir. 2006) ................................................................. 9, 15, 16

*Kimm v. Lee*,
   No. 04-cv-5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) .......................... 9, 10, 11, 12

*Laboratories Majorelle SAS v. Apricus Bioscis., Inc.*,
   No. 17-cv-6625(AT), 2018 WL 11222863 (S.D.N.Y. Sept. 21, 2018) .................................. 23

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................. 18

*Lynch v. Amoruso*,
   232 F. Supp. 3d 460 (S.D.N.Y. 2017) ................................................................. 7

*M'Baye v. N.J. Sports Prod., Inc.*,
   No. 06-cv-3439-DC, 2007 WL 431881 (S.D.N.Y. Feb. 7, 2007) .............................. 5

*Mackin v. Auberger*,
   59 F. Supp. 3d 528 (W.D.N.Y. 2014) ................................................................. 4

*McLaughlin v. Anderson*,
   962 F.2d 187 (2d Cir. 1992) ............................................................................. 12

*McNally v. United States,*
   483 U.S. 350 (1987) ............................................................................................... 10

*Metro. Intercollegiate Basketball Ass'n v. Nat'l Collegiate Athletic Ass'n,*
   337 F. Supp. 2d 563 (S.D.N.Y. 2004) ................................................................... 25

*Miller v. Carpinello,*
   No. 06-cv-12940(LAP), 2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) ................... 8

*Miller v. Nicholas,*
   No. 20-cv-5230(WFK)(SJB), 2021 WL 9037639 (E.D.N.Y. Nov. 3, 2021) ........... 23

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union,*
   215 F.3d 923 (9th Cir. 2000) ................................................................................. 9

*Moore v. PaineWebber, Inc.,*
   189 F.3d 165 (2d Cir. 1999) ................................................................................. 18

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
   710 F.3d 71 (2d Cir. 2013) ................................................................................... 22

*Nygård v. Bacon,*
   No. 19-cv-1559(LGS), 2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021) ................... 16

*O'Malley v. N.Y.C. Transit Auth.,*
   896 F.2d 704 (2d Cir. 1990) ......................................................................... 8, 9, 11

*Pennsylvania v. New Jersey,*
   426 U.S. 660 (1976) ............................................................................................. 22

*PepsiCo, Inc. v. Coca-Cola Co.,*
   315 F.3d 101 (2d Cir. 2002) ................................................................................. 21

*Petroff Amshen LLP v. Alfa Rehab PT PC,*
   No. 19-cv-1861, 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021) ............................... 16

*Rapaport v. Doe #1,*
   No. 25-841 (2d Cir.) ............................................................................................... 3

*Rapaport v. Iyer,*
   No. 23-cv-6709 (JGLC), 2025 WL 966275 (S.D.N.Y. Mar. 31, 2025) ............ 1, 3, 4

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
   30 F.3d 339 (2d Cir. 1994) ..................................................................................... 6

*RxUSA Wholesale, Inc. v. Alcon Lab'ys, Inc.,*
   661 F. Supp. 2d 218 (E.D.N.Y. 2009) ................................................................. 24

*Sacerdote v. N.Y. Univ.,*
   9 F.4th 95 (2d Cir. 2021) .................................................................................... 4, 6

*Schlaifer Nance & Co. v. Est. of Andy Warhol,*
   119 F.3d 91 (2d Cir. 1997) ................................................................................... 12

*Snyder v. U.S. Equities Corp.,*
   No. 12-cv-6092, 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014) ................................ 7

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993) ............................................................................... 19, 21

*Spool v. World Child Int'l Adoption Agency,*
    520 F.3d 178 (2d Cir. 2008) ................................................................... 13, 15

*Sykes v. Mel S. Harris & Assocs. LLC,*
    780 F.3d 70 (2d Cir. 2015) ........................................................................... 5

*Tops Mkts., Inc. v. Quality Mkts., Inc.,*
    142 F.3d 90 (2d Cir. 1998) ......................................................................... 19

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.*
    *Walgreen Co.,*
    719 F.3d 849 (7th Cir. 2013) ........................................................................ 6

*United States v. Autuori,*
    212 F.3d 105 (2d Cir. 2000) ................................................................... 10, 12

*United States v. Ermoian,*
    752 F.3d 1165 (9th Cir. 2013) ...................................................................... 8

*United States v. Ferrara,*
    701 F. Supp. 39 (E.D.N.Y. 1988) ............................................................... 11

*United States v. Ramos,*
    537 F.3d 439 (5th Cir. 2008) ........................................................................ 8

*Velez v. Levy,*
    401 F.3d 75 (2d Cir. 2005) ......................................................................... 12

*Watral v. Silvernails Farm LLC,*
    51 F.App'x 62 (2d Cir. 2002) ...................................................................... 14

*Westchester Cnty. Indep. Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ......................................................... 17

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) .................................................................................... 11

**Statutes**

18 U.S.C. § 1343 ............................................................................................. 10

18 U.S.C. § 1503 ............................................................................................... 8

18 U.S.C. § 1512 ............................................................................................... 7

18 U.S.C. § 1951 ............................................................................................. 11

18 U.S.C. § 1961 ........................................................................... 6, 7, 8, 9, 12

18 U.S.C. § 1962 ..................................................................... 5, 7, 12, 15, 17

18 U.S.C. § 1964 ............................................................................................. 11

**Other Authorities**

*Black's Law Dictionary* (12th ed. 2024) ......................................................... 9

**Rules**

Fed. R. Civ. P. 9 ................................................................................................................ 4, 10

## INTRODUCTION

Plaintiff Gideon Rapaport has turned repeatedly to the judicial system to air his grievances about perceived years-old slights from his time as a student at New York University School of Law ("NYU Law"). In an earlier action, Rapaport claimed that two of his former classmates and Professor Richard Epstein defamed him in connection with the circumstances surrounding Rapaport's no longer working at Kirkland & Ellis. *See* Compl. ¶¶ 6–8, *Rapaport v. Iyer*, No. 23-cv-6709(JGLC) (S.D.N.Y.), ECF No. 1. In that action, Rapaport also claimed that these individuals prevented Rapaport from obtaining the judicial clerkship he thought he deserved.

Although the claims in that action have now been dismissed, Rapaport presses on, continuing to sue his former classmates and professor because Rapaport thought he was entitled to a clerkship, which did not come to fruition. This time around, however, Rapaport does not accuse his former classmates of defamation, but he instead asserts a harebrained theory that several former classmates and Professor Epstein were involved in an "'Organized Law' Racket." *See* First Am. Compl. ("FAC" or "Complaint"), App'x A (ECF No. 71). And this racket allegedly prevented Rapaport from obtaining a clerkship. Of course, the First Amended Complaint confirms that the *real* cause of Rapaport's not getting the clerkship he wanted was his failure to apply.

As shown below, Rapaport fails to plead facts to support his claims, which are brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Sherman Antitrust Act ("Sherman Act"). In fact, Rapaport fails to allege facts supporting any element of his claims. Instead, Rapaport's claims are entirely implausible, and they border on the frivolous. Accordingly, the Court should dismiss the claims brought against Defendants Ajay Iyer, Zachary Garrett, William Weinberg, and Andrew Nelms ("Student Defendants") for failing to state a claim.

## BACKGROUND

### A.    Factual background

Plaintiff Gideon Rapaport graduated NYU Law, and he alleges civil RICO and antitrust violations against Defendants Richard Epstein and five former NYU Law students. In the main, Rapaport's Complaint centers on his perception that Defendants allegedly captured and retained control of the NYU Law Federalist Society student chapter ("Student Chapter"), which led to Rapaport's not obtaining a clerkship and other roles.

According to Rapaport, Defendants conspired to oust him from his position as president of the Student Chapter in September 2020. FAC ¶ 77. To do so, Defendants allegedly relied on false statements about his leadership. *Id.* ¶ 59. Defendants also allegedly extorted, blackmailed, and threatened other Student Chapter members to vote to oust Rapaport from his position. *Id.* ¶¶ 76–77. From there, Defendants allegedly extorted, blackmailed, and threatened the Federalist Society's national organization to demand that the Student Defendants be able to retain control of the Student Chapter. *Id.* ¶ 208.

More than one year later, in 2022, Rapaport was allegedly outside a bar in New York speaking with Defendant Garrett. *Id.* ¶¶ 116–17. Allegedly, another student reported to the bar that Rapaport "had been 'creeping' on her," and the bar would not permit Rapaport to reenter. *Id.* ¶¶ 117–18. When Rapaport later claimed that the bar violated his human rights, *id.* ¶ 121, Rapaport alleges that Defendants Iyer and Pallaki instructed Defendant Garrett to perjure himself in any investigation of Rapaport's human rights complaint. *Id.* ¶ 122.

Later still, Rapaport alleges that, during the summer of 2022, Defendants Pallaki, Iyer, and Garrett fabricated pictures of the security desk of Kirkland & Ellis's New York office to support a defamatory story that Rapaport was fired from his summer associate position for sexual harassment, and that he was banned from the premises. *Id.* ¶¶ 127–138. Rapaport claims that the

allegedly defamatory allegations constituted wire fraud because they were posted online, emailed, and discussed by phone. *Id.* ¶¶ 127–138, 212.

Beyond those allegations against his former classmates, Rapaport scatters various allegations against Professor Epstein throughout his Complaint, largely claiming that Professor Epstein controls the clerkship market at NYU Law.

## B.    Procedural background

As noted, this is not Rapaport's first lawsuit against several of the Student Defendants.  In an earlier action in this Court, Rapaport accused Defendants Iyer and Garrett of defamation.  This Court dismissed those claims and consolidated the remaining portions of that case with this case. *See Rapaport v. Iyer*, No. 23-cv-6709 (JGLC), 2025 WL 966275 (S.D.N.Y. Mar. 31, 2025).  In this newly consolidated case, Rapaport was directed to file an amended complaint addressing any remaining claims from that original action and this action.

However, Rapaport elected not to file an amended complaint with respect to any claims from his original action. He is instead challenging that dismissal on appeal, which remains pending. *See Rapaport v. Doe #1,* No. 25-841 (2d Cir.). With respect to the RICO and antitrust claims in this matter, Rapaport amended his Complaint, but he failed to add any factual allegations that save his claims from dismissal or that address any of the pleading defects the Student Defendants identified in their earlier motion to dismiss.  *See* ECF Nos. 41, 42.

## ARGUMENT[1]

Rapaport's Complaint fails to satisfy his burden to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*,

---

[1] Student Defendants expressly adopt and incorporate the arguments advanced in the motions to dismiss filed by Defendants Pallaki and Epstein.

9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). That failure is particularly true given that he bases several claims on purported fraud, which requires that the Complaint satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

To be sure, the Court must accept as true the Complaint's factual allegations, but it must disregard the Complaint's many "conclusory allegations" and "'formulaic recitations of the elements of a cause of action.'" *Sacerdote*, 9 F.4th at 107 (quoting *Twombly*, 550 U.S. at 555). Additionally, courts in this Circuit recognize that "[a] plaintiff's burden is high when pleading RICO allegations as '[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies.'" *Mackin v. Auberger*, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014) (collecting cases).[2]

Applying these standards, the Court should dismiss Rapaport's claims against the Student Defendants. Indeed, Rapaport has not alleged facts showing any plausible RICO or antitrust violation. And Rapaport's inability to do so even after amending his Complaint speaks volumes. Accordingly, the Court should dismiss all claims against the Student Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.

## I.    The Civil RICO Claims Fail.

Rapaport's substantive civil RICO claims, Counts I and II (FAC ¶¶ 199–227), should be

---

[2] As this Court previously recognized, Rapaport's *pro se* status requires additional deference and leniency. *Rapaport*, 2025 WL 966275, at *3, *8. However, any such leniency should be limited at this point, where Rapaport has been permitted multiple amendments across various lawsuits and where multiple motions to dismiss have been filed to address the many defects in his claims. By continuing to ignore those defects, Rapaport effectively concedes that he has no additional facts to allege that may save his claims. Further, although Rapaport is *pro se*, he is legally trained. He should understand the need to address this Court's orders better than most *pro se* litigants.

dismissed for failing to state a claim. For these claims, Rapaport must allege facts showing (1) a substantive violation under 18 U.S.C. § 1962; (2) an injury to Rapaport's business or property; and (3) that the injury was by reason of the substantive RICO violation. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015). Rapaport fails to satisfy each of these requirements, and his RICO claims must be dismissed.

Rapaport's RICO conspiracy claims, Claims III and IV (FAC ¶¶ 228–43), fail for the same reasons. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 164 (2d Cir. 2004) ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims."); *M'Baye v. N.J. Sports Prod., Inc.,* No. 06-cv-3439-DC, 2007 WL 431881, at *8 (S.D.N.Y. Feb. 7, 2007) ("Where a substantive RICO claim is deficient, a RICO conspiracy claim under § 1962(d) must be dismissed.").

### A.    Rapaport fails to allege a substantive RICO claim.

The threshold requirement for a civil RICO claim is showing a substantive violation under 18 U.S.C. § 1962. For this, Rapaport must show (1) the existence of an enterprise; (2) that the enterprise engaged in or affected interstate or foreign commerce; and (3) a pattern of racketeering activity. 18 U.S.C. § 1962.[3]

---

[3] Rapaport must also satisfy the additional requirements found in either 18 U.S.C. § 1962 (b) or § 1962(c). Under subpart (b), Rapaport must demonstrate that the defendant acquired or maintained, directly or indirectly, an interest in or control of the enterprise by a pattern of racketeering activity. *Id.* § 1962 (b). Alternatively, under subpart (c), Rapaport must demonstrate that the defendant was employed by or associated with the enterprise, and that the defendant conducted or participated, either directly or indirectly, in conduct of the enterprise's affairs through a pattern of racketeering activity. *Id.* § 1962 (c). However, because Rapaport's Complaint fails to satisfy § 1962's threshold requirements, the Court need not analyze whether Rapaport's Complaint satisfies these subparts.

1.      **Rapaport fails to allege an enterprise.**

For the purposes of a civil RICO claim, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Rapaport's Complaint fails to allege sufficient facts showing the existence of an enterprise. Instead, Rapaport simply refers to the Student Chapter and the *Journal of Law and Liberty* as enterprises. FAC ¶¶ 201, 224, 232, 241. But such conclusory statements will not suffice. *Sacerdote*, 9 F.4th at 107. Moreover, to qualify as a "union or group of individuals associated in fact," the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Cap. Asset Mgmt.,* 385 F.3d at 173–74. And the enterprise's regular course of conduct must be distinct from its alleged pattern of racketeering activity. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994) (holding that the activities of two loan officers acting within the scope of their authority could not subject them to RICO liability for conducting the affairs of the alleged enterprise-bank).

In his Complaint, Rapaport attempts to satisfy these requirements by claiming that the Defendants were engaged in an association-in-fact enterprise. But the Complaint undermines that argument. As the Second Circuit explains, the defendants in an alleged association-in-fact enterprise must act "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F.App'x 663, 668 (2d Cir. 2014) (quoting *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013)). Indeed, "RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." *Id.* (quoting *Walgreen*, 719 F.3d at 851). But Rapaport's entire theory turns on Defendants' alleged self-interest. He says the Student Defendants purportedly acted out of their

6

own self-interests to curry favor with Professor Epstein to earn his recommendation for a clerkship. Such self-interest confirms there was no enterprise, which is fatal to Rapaport's RICO claims.

### 2.      Rapaport fails to allege sufficient predicate acts.

Even if Rapaport adequately alleged facts showing an enterprise, his RICO claims must still be dismissed because he fails to allege that Student Defendants participated in any racketeering activity. *See* 18 U.S.C. § 1962. But that is not for lack of effort, as Rapaport fills his Complaint with various allegations of alleged predicate acts. However, at each turn, Rapaport's allegations are foreclosed by statute or binding authority.

1. For instance, Rapaport alleges that Iyer instructed Garrett to commit perjury about an alleged human rights violation based on Rapaport's being refused entry to a bar. FAC ¶ 210. However, perjury is not a qualifying RICO predicate act. *See* 18 U.S.C. § 1961(1); *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) ("Congress did not include perjury as one of the enumerated RICO predicate offenses." (quoting *Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014))). And, if perjury is not a RICO predicate offense, instructing someone else to commit perjury certainly cannot be a RICO predicate offense. That fact is equally fatal to Rapaport's misguided allegation that Iyer and Garrett filed perjured affidavits in Rapaport's earlier lawsuit against them. FAC ¶ 183.

2. Rapaport also alleges that Defendants engaged in witness tampering regarding an investigation into Rapaport's claims that his human rights were violated when a bar in New York denied him entry. *See* FAC ¶¶ 122, 211, 224. But witness tampering only satisfies the predicate-offense requirement in limited circumstances, where the tampering involves (1) "kill[ing] or attempt[ing] to kill another person," 18 U.S.C. § 1512(a); (2) "us[ing] physical force or the threat of physical force," *id.*; (3) "knowingly us[ing]" intimidation, threats, or corrupt persuasion, or attempting to do so, or "engag[ing] in misleading conduct toward another person," but only

regarding "an official proceeding," *id.* § 1512(b); or (4) "intentionally harass[ing] another person" to prevent their participation in certain official, federal, or criminal proceedings, *id.* § 1512(d). Rapaport's allegations do not come close to satisfying these requirements. The "official proceeding" provision does not apply to "[p]roceedings in state courts or before state administrative bodies." *Miller v. Carpinello*, No. 06-cv-12940(LAP), 2007 WL 4207282, at *7 n.6 (S.D.N.Y. Nov. 20, 2007).

Nor may Rapaport point to witness tampering during an alleged investigation. As various circuits have held, "a criminal investigation is not an 'official proceeding' under the obstruction of justice statute" because the term specifically "connotes some type of formal hearing." *United States v. Ermoian*, 752 F.3d 1165, 1170, 1172 (9th Cir. 2013); *accord United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008). And, if a criminal investigation is not an official proceeding, then an alleged human rights investigation certainly does not suffice.

3. Rapaport also alleges that Defendants obstructed justice. FAC ¶¶ 183, 210. Although obstruction of justice is a RICO predicate, *see* 18 U.S.C. § 1961(1), it is expressly limited to federal court proceedings, *see* 18 U.S.C. § 1503; *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 708 (2d Cir. 1990). Accordingly, Rapaport's allegations about a state investigation of human rights violations are insufficient to show a RICO predicate.  FAC ¶ 210.  And, although the obstruction of State or local law enforcement is a RICO predicate, *see* 18 U.S.C. § 1961(1), it is expressly limited to enforcement of "criminal laws … with the intent to facilitate an illegal gambling business," *see id.* § 1511. Rapaport's allegations obviously do not present any issues related to an illegal gambling business. *See* FAC ¶¶ 201, 224, 232, 241.

Equally unavailing is Rapaport's attempt to recast his allegations of perjury as allegations of obstruction of justice. *Id.* ¶ 183. As noted, perjury is not a RICO predicate. And Rapaport cannot

sidestep that clear rule by calling perjury "obstruction of justice." The Second Circuit noted previously that it was "preposterous" to claim obstruction of justice based on perjury in a state hearing and ordered the district court to impose Rule 11 sanctions. *O'Malley*, 896 F.2d at 707.

Additionally, to the extent Rapaport's perjury allegation against Iyer and Garrett involves accusations of filing perjured affidavits, it misses the mark. FAC ¶ 183. A closer examination of Rapaport's allegation shows that he simply disagrees with Defendants' denying Rapaport's accusation of wrongdoing. *Id.* It cannot be, as Rapaport suggests, that by denying his outlandish allegations, Iyer and Garret "deliberately ma[de] material false or misleading statements under oath[.]" *Perjury*, *Black's Law Dictionary* (12th ed. 2024).

4. Rapaport also reprises his claims from his earlier lawsuit, where he complains about statements made online about his purportedly being fired from Kirkland & Ellis. FAC ¶ 212. This time, however, Rapaport attempts to repackage his defamation claim (which this Court dismissed) as a predicate RICO offense by characterizing it as wire fraud. *Id.* This will not do.

Indeed, defamation is also not a RICO predicate. *See* 18 U.S.C. § 1961(1); *Kimm v. Lee*, No. 04-cv-5724(HB), 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) (collecting cases), *aff'd sub nom. Kim v. Chang Hoon Lee & Champ, Inc.*, 196 F.App'x 14 (2d Cir. 2006). And Rapaport cannot shoehorn a garden-variety defamation claim into a RICO predicate by calling it wire fraud. Instead, the mail and wire fraud statutes are intended "to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings." *Kimm*, 2005 WL 89386, at *5 (quoting *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 927 (9th Cir. 2000)). In fact, courts in this district have repeatedly found that a plaintiff who pleads "thinly clothed defamation claims" as RICO predicates under the mail or wire fraud statutes comes "perilously close to violating Rule 11 in his pleading of RICO claims because, *inter alia*, the

insufficiency of a defamation charge as a RICO predicate act is ascertainable from the face of the statute." *Id.* at *4, *5 (cleaned up). Thus, the alleged distribution of false images is clearly not a RICO predicate, and Rapaport cannot dress it up as wire fraud.

5. Elsewhere, Rapaport alleges that Defendant Weinberg participated in a predicate act by sending Rapaport work product that he says intentionally included typos. FAC ¶¶ 62, 205. Rapaport does not explain what RICO predicate covers transmitting intentionally defective work product. Even under a charitable reading of the Complaint that this transmission was wire fraud, it would fail. Wire fraud must be pleaded with particularity, *see* Fed. R. Civ. P. 9(b), but the Complaint clearly does not do so. The wire fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" by use of U.S. wires. 18 U.S.C. § 1343. This statute "do[es] not define 'scheme to defraud,' but it has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2000) (quoting *McNally v. United States,* 483 U.S. 350, 358 (1987)). "It is plain that intent to injure is not the equivalent of intent to defraud." *Kimm*, 2005 WL 89386, at *4 (cleaned up). The alleged transmission of defective work product plainly is not wire fraud, as Rapaport fails to allege that "money or property" was the goal of the alleged "scheme," and he fails to allege with particularity an "intent to defraud" behind sending the allegedly defective work product.[4] Accordingly, this allegation also fails to constitute a RICO predicate act.

6. Rapaport also alleges that Defendants Weinberg and Nelms extorted, blackmailed, and threatened the Federalist Society national organization to prevent that organization from stepping

---

[4] The same is true of Rapaport's passing suggestion that Garrett engaged in wire fraud during the alleged investigation into Rapaport's claim of a human rights violation outside a New York City bar. FAC ¶ 210.

in and stopping Defendants' alleged "capture of the enterprise [*e.g.*, the Student Chapter]." FAC ¶ 208. Similarly, Rapaport alleges that Defendant Nelms committed a predicate act by extorting, blackmailing, and threatening two student board members to vote against Rapaport. *Id.* ¶¶ 77, 207.

This allegation fails for several reasons. For one, Rapaport does not allege that *he* suffered an injury. Instead, he claims that the Federalist Society and certain Student Chapter board members were injured. However, the injury must be to the plaintiff's "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see also Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (RICO plaintiff can recover for "injuries it suffered directly," not for injuries suffered by a third party). But even if that were not fatal, the claim still fails because Rapaport only alleges (FAC ¶ 208) a threatened "reputational harm and embarrassment," which cannot support a RICO predicate. *See Kimm*, 2005 WL 89386, at *4; *United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988) ("[I]f one's reputation—standing alone—could be construed as property, then any ordinary defamation action could be brought under the mail fraud statute—a startling proposition."), *aff'd*, 868 F.2d 1268 (2d Cir. 1988). Moreover, this claim also fails because an "act of extortion requires the interference or attempted interference with commerce by the 'obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" *O'Malley*, 896 F.2d at 708 (quoting 18 U.S.C. § 1951(b)(2)).

Rapaport has not alleged that the alleged extortion resulted in obtaining any property interest, just control of the Student Chapter. And it was not accomplished by threatened force, violence, or fear. Nor can Rapaport rely on state statutes about blackmail or threats unless they "fit the traditional definition of extortion." *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007). His claims of blackmail and threats thus fail for the same reasons that his extortion claim fails.

7.  Finally, Rapaport claims that Defendants filed a false complaint with NYU allegedly accusing Rapaport of poor leadership of the Student Chapter. FAC ¶¶ 59, 203. But filing a false complaint with a school is not a RICO predicate. *See* 18 U.S.C. § 1961(1). If Rapaport meant to allege it to be wire fraud, it would still fail, for the reasons discussed above. Nor does Rapaport plausibly allege any intent to defraud him of property, as required. *See Autuori*, 212 F.3d at 115; *Kimm*, 2005 WL 89386, at *4. Moreover, the Second Circuit has held that an elected official "lacks a constitutionally cognizable property interest in her elected office." *Velez v. Levy*, 401 F.3d 75, 85–86 (2d Cir. 2005). If that holds true for offices created by the New York State Assembly, so much more so for offices created by NYU Law. In any event, Rapaport alleges that this false complaint "did not result in any formal investigation or punishment[.]" FAC ¶ 59.

For these various reasons, the Complaint fails to allege sufficient facts showing that the Student Defendants participated in a requisite predicate act.

### 3.  Rapaport fails to allege a pattern of racketeering activity.

Rapaport also fails to allege a sufficient pattern of racketeering activity. *See* 18 U.S.C. § 1962. To satisfy this requirement, Rapaport must allege at least two predicate acts within a 10-year period. 18 U.S.C. § 1961(5). Additionally, each Defendant must have "personally committed" two or more predicate acts of "racketeering activity." *McLaughlin v. Anderson*, 962 F.2d 187, 191–92 (2d Cir. 1992); *see also* 18 U.S.C. § 1961(5). When the Court "analyz[es] the issue of continuity," it "evaluate[s] the RICO allegations with respect to each defendant individually." *First Cap. Asset Mgmt.*, 385 F.3d at 180. In doing so, this Court "must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Est. of Andy Warhol,* 119 F.3d 91, 98 (2d Cir. 1997). Additionally, the alleged predicate acts must "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J. Inc. v. Nw.*

*Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

This "continuity requirement" can be satisfied in two ways. A plaintiff can allege that the predicate acts show a "closed-ended" pattern of racketeering activity—that is, "a series of related predicate acts extending over a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing *H.J. Inc.*, 492 U.S. at 241). Or a plaintiff can allege an "open-ended" pattern of racketeering activity that "poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.* (citing *H.J. Inc.*, 492 U.S. at 241). Rapaport fails to allege either.

1. Rapaport has not alleged a closed-ended pattern because he has not alleged that Defendants' purported RICO violations extended over a "substantial period of time," which is generally understood to mean at least two years. *See First Cap. Asset Mgmt.*, 385 F.3d at 181. In fact, the Second Circuit "ha[s] never found predicate acts spanning less than two years to be sufficient to constitute closed-ended continuity." *Grace Int'l Assembly of God v. Festa*, 797 F.App'x 603, 605 (2d Cir. 2019). However, "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt.*, 385 F.3d at 181.

Rapaport initially alleges that Defendants' purported predicate acts occurred in: (i) September 2020, when he was ousted as president; (ii) April 2022, when he was denied entry to a bar; and (iii) July and August 2022, when he was the subject of allegedly false images distributed on the internet. FAC ¶¶ 203–08, 210–14. These events all took place within two years of each other, which the Second Circuit has never found to be sufficient to show closed-ended continuity. *See Grace Int'l Assembly of God*, 797 F.App'x at 605. Moreover, Rapaport does not

even allege that Defendants Garrett and Iyer participated in the acts of September 2020, nor does he allege that Defendants Nelms or Weinberg participated in the 2022 acts. Thus, the discrete acts alleged in the Complaint, involving different groups of people, fall far below the "minimum duration necessary to find closed-ended continuity." *First Cap. Asset Mgmt.*, 385 F.3d at 181 (emphasis omitted).

Even Rapaport's new allegation that Iyer and Garrett "obstructed justice by filing two perjured affidavits" in September 2024 fails to show a plausible closed-ended pattern of racketeering activity. True, those affidavits were filed more than two years after the allegedly false images of Rapaport were distributed on the internet or when Rapaport was denied entry to a New York bar. FAC ¶¶ 203–08, 210–14, 215. But that is not enough; something "more" is required. *First Cap. Asset Mgmt.*, 385 F.3d at 181. The "more" are other facts showing a pattern of racketeering activity, such as "separate schemes or large numbers of participants and victims." *DeFalco v. Bernas*, 244 F.3d 286, 322 (2d Cir. 2001); *accord Watral v. Silvernails Farm LLC*, 51 F.App'x 62, 66 (2d Cir. 2002) ("Generally, courts have found that such a discrete and limited scheme aimed at one victim is insufficient to support closed-ended continuity.") (citing cases). The allegations must also show that the alleged predicate acts are "related." *H.J. Inc.*, 492 U.S. at 242.

Rapaport does not attempt to include any such supporting allegations. He does not explain how the affidavits Iyer and Garrett filed in response to his disqualification motion are "related" to internet posts made years earlier or to his being denied entry to a bar. Nor does Rapaport allege that there were "large numbers of participants or victims." *DeFalco*, 244 F.3d at 322. Instead, Rapaport relies on the conclusory allegation that he believes Iyer and Garrett filed false affidavits and that this was obstruction of justice. Such speculation will not do. *See Watral*, 51 F.App'x 66 (rejecting the argument that "racketeering activity was continued through false statements made

14

in the litigation process" where "plaintiff basically describes common disagreements" of fact). To be sure, Rapaport may disagree with the statements in the affidavits that Iyer and Garrett filed, but he fails to allege facts showing that they were part of a pattern of racketeering activity.

2. Similarly, Rapaport has not sufficiently alleged an open-ended scheme, which requires conduct projected into the future. *Spool*, 520 F.3d at 183. The Complaint clearly alleges that any involvement by the Student Defendants in the alleged civil RICO violations has ended. The Student Defendants and Rapaport have all graduated and have no ongoing relationship.

Because Rapaport has not properly pleaded a pattern of racketeering activity, he has failed to adequately allege a substantive RICO violation.[5]

**B.    Rapaport's alleged injuries do not support a RICO claim.**

Rapaport's Complaint must also be dismissed because he has not alleged a cognizable injury. *See* 18 U.S.C. § 1962. Instead, Rapaport largely claims to have suffered reputational injuries, which cannot support a RICO claim: There is no RICO injury where "the generalized reputational harms alleged, including the risk of future lost business commissions, are too speculative to constitute an injury to business or property." *Kim*, 196 F.App'x at 16 (summary order) (citing *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990)); *see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("[R]eputational injuries are insufficient to support a civil RICO claim."). And the injury to business or property "must be different from the

---

[5] Even if Rapaport had alleged a pattern, the civil RICO statute would be unconstitutionally vague as applied here. Justice Scalia raised this issue in *H.J. Inc.*, 492 U.S. at 251 (1989) (Scalia, J., concurring). The fact that RICO "has criminal applications" means it "must, even in its civil applications, possess the degree of certainty required for criminal laws." *Id.* at 255 (quoting *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954)). Justice Scalia noted that the vagueness issue was not then before the Supreme Court, but "[t]hat the highest Court in the land has been unable to derive from [RICO] anything more than today's meager guidance bodes ill for the day when that challenge is presented." *Id.* at 256.

damages that flow from the predicate acts themselves." *D'Addario v. D'Addario*, 901 F.3d 80, 98 (2d Cir. 2018) (cost of replacing property destroyed by arson to extort plaintiff not sufficient; must show damages from ultimate acquisition of enterprise). Accordingly, Rapaport's allegations of reputational injuries (¶¶ 175–76, 208) will not do.[6]

To the extent Rapaport attempts to reframe his reputational injuries as an "injury to his business," FAC ¶ 218, he cannot do so. The Second Circuit has explained that "[c]ourts in this district and others have persuasively concluded that reputational harm resulting in the loss of business opportunities is a cognizable RICO injury if the pecuniary losses from the missed opportunities are quantifiable and non-speculative." *Nygård v. Bacon*, No. 19-cv-1559(LGS), 2021 WL 3721347, at *5 (S.D.N.Y. Aug. 20, 2021) (collecting cases). Where, as here, a plaintiff only alleges "generalized reputational harms," including "the risk of future lost business," the allegations "are too speculative to constitute an injury to business or property." *Kim*, 196 F.App'x at 16 (citing *Hecht*, 897 F.2d at 24); *accord Kerik*, 64 F. Supp. 3d at 561 ("[R]eputational injuries are insufficient to support a civil RICO claim."); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-cv-1861, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021) (allegations failed to allege a plausible injury for civil RICO where they "fail to identify specific instances of lost business and only conclusorily allege potential lost clients based on reputational harm") (collecting cases), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

Nor does a non-business injury "become a business injury simply by virtue of calling it that; what Plaintiffs allege again here is, at most, a non-economic injury, which is not cognizable as a RICO injury." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 615 (S.D.N.Y.

---

[6] Of course, Rapaport's bald and conclusory statement (¶ 37) that he "has been directly victimized by [the] predicate acts" is easily set aside. *See Twombly*, 550 U.S. at 555.

2015). Simply put, control of the Student Chapter "cannot be considered property in the hands of the victim." *Id.* at 603.

That is equally fatal to Rapaport's unsupported references to his being harmed through being "deprived of his property." *E.g.*, FAC ¶¶ 212, 218, 234. Such conclusory and unsupported allegations are insufficient to state a claim. *Twombly*, 550 U.S. at 555.

Finally, Rapaport cannot rely on "incurring legal costs associated with" this case as a RICO injury. FAC ¶ 235. In this Circuit, legal costs may constitute a sustainable RICO injury, but "only … where defendant's underlying wrongful acts contemplate the victim responding in court." *Aramony v. United Way of Am.*, 969 F. Supp. 226, 232 (S.D.N.Y. 1997) (citing cases). For instance, costs may be a predicate when a plaintiff spends time responding to frivolous claims and filings. *Id.* (citing *Bankers Trust*, 859 F.2d at 1102. Here, of course, Rapaport has not been the one responding to frivolous claims and filings; Defendants have been.  And Rapaport does not allege that the Student Defendants engaged in predicate acts with the underlying goal of requiring Rapaport to "respond[] in court." *Aramony*, 969 F. Supp. at 232.

Thus, Rapaport's Complaint fails to allege any non-speculative or quantifiable injuries, and he has therefore failed to satisfy a requirement for his civil RICO claims, which must be dismissed.

### C.    Rapaport has not properly alleged causation.

Finally, Rapaport's RICO claims fail because he cannot demonstrate causation, which requires that his injuries were caused by the alleged substantive civil RICO violation. *See* 18 U.S.C. § 1962. In this Circuit, a plaintiff must allege facts showing that "the RICO pattern or acts … *proximately* cause plaintiff's injury," meaning that "they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht*, 897 F.2d at 23–24. RICO plaintiffs are held "to a more stringent showing of proximate cause than would be required at common law," so not only must the plaintiff be "in a

foreseeable category of persons who might be harmed," but "the kind of harm the victim suffered [must] be foreseeable as well" and "it is usually easier for intervenors to break the chain of causation in RICO[.]" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 n.5 (2d Cir. 2006) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi, J., concurring)). Rapaport's Complaint fails to satisfy this requirement for a host of reasons, including the lack of any injury and Rapaport's failure to account for intervening events.

For all Rapaport's complaints about being ousted as president of the Student Chapter, he fails to identify any injury cognizable under RICO that is tied to that ouster. And, to the extent Rapaport alleges that this impacted his ability to obtain a clerkship, the Complaint tells another story. According to Rapaport, even after his ouster, Professor Epstein was still willing to recommend Rapaport for clerkships, and Professor Epstein offered Rapaport a journal position and a position "to teach Property in addition to Food and Drug Law." FAC ¶ 125. Thus, the ouster had no impact on Rapaport's perceived injury.

Similarly, as to complaints about being denied entry to a bar and the ensuing human rights claim, *id.* ¶¶ 118, 121, Rapaport again fails to identify any injury. With no causal link between that alleged incident and any injury, this allegation cannot support Rapaport's RICO claims.

For the other alleged racketeering acts, Rapaport fails to account for various intervening events, each of which breaks any causal chain. For instance, to the extent Rapaport complains about not obtaining a clerkship, his failure to even *apply* for a clerkship is a significant intervening cause that breaks the causal chain for the Student Defendants. So too is the lack of a recommendation from Professor Epstein.

Additionally, when discussing the allegedly forged photographs, Rapaport alleges that the Federalist Society national organization saw through the forgeries and took no action in response,

*see id*. ¶ 137, and thus no harm could have been caused as to Rapaport's relationship with the Federalist Society. Elsewhere, Rapaport alleges that Professor Epstein continued to "boycott" him even after learning that the photographs of Rapaport were "false and supported by forgeries." *Id.* ¶ 139. So, the allegedly false and forged photographs also could not have been a cause of Rapaport's alleged harm.

Thus, Rapaport fails to connect any alleged injury to an action of the Student Defendants.

\* \* \*

Rapaport has failed to allege any plausible civil RICO violation. His Complaint does not show the existence of a RICO enterprise; the Student Defendants' alleged acts are not RICO predicates, and, even if they were, they do not show a pattern of racketeering activity; and Rapaport likewise fails to show a cognizable injury or causation. Accordingly, the Court should dismiss Rapaport's RICO claims.

## II.    The Antitrust Claims Fail.

Rapaport also includes multiple types of antitrust claims against the Student Defendants, each of which fails. *See* FAC ¶¶ 244–53. For instance, in Counts V and VI, Rapaport claims that Defendants participated in (and attempted to participate in) an unlawful monopoly. For this claim, Rapaport must plead facts showing "(1) the defendant had monopoly power in the relevant market; (2) the defendant engaged in anticompetitive conduct; and (3) [the plaintiff's] injury was, in fact, caused by the defendant's violation of the antitrust laws." *Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 244 (2d Cir. 1992) (quotation marks omitted). And for a claim of *attempted* monopoly, Rapaport must also allege facts showing a "dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 99–100 (2d Cir. 1998).

In Counts VII–IX, Rapaport claims that Defendants unlawfully and unreasonably

restrained trade with respect to Rapaport's think-tank work, journal participation, and clerkship. FAC ¶¶ 254–67. For these claims, Rapaport must allege facts showing (1) "a combination or some form of concerted action between at least two legally distinct economic entities," and (2) "that the agreement constituted an unreasonable restraint of [interstate] trade[.]" *Cap. Imaging Assocs. P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993).

Irrespective of how Rapaport frames his antitrust claims, they must each be dismissed because Rapaport fails to allege facts plausibly showing (1) Defendants holding any monopoly power; (2) a market; (3) an antitrust injury; or (4) any restraint on trade.

### A.    Rapaport fails to allege actual or attempted monopoly power.

Rapaport's allegations do not show that the Student Defendants had any monopoly power. To be sure, Rapaport alleges that Defendants monopolized the judicial clerkship market flowing through NYU Law, which is allegedly "one of a handful of pipelines to such professional distinction and employment, which are a requirement for access to this market." FAC ¶¶ 245, 250. But Rapaport does not allege how the Student Defendants played *any* role in that process. Instead, Rapaport points the blame elsewhere. *Id.* ¶¶ 246, 251.

Rapaport's monopoly claims fail for another reason—they are implausible. Indeed, these claims are based on a complete misunderstanding of how clerkship hiring works, insulting the judiciary by contending that Professor Epstein has "succeeded in effectively converting a record amount of federal clerkship positions into his private property, which he has trafficked in for his personal power, gratification and profit[.]" FAC ¶ 34. Of course, Rapaport fails to acknowledge that it is the *judges* who choose their clerks through a highly competitive process. And Rapaport does not allege even one instance where a judge was compelled to rely on Professor Epstein's recommendations. The Complaint is simply silent on how Defendants have "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition."

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2002). And the Court need not adopt implausible allegations at the motion-to-dismiss stage. *Twombly*, 550 U.S. at 555.

Nor does Rapaport allege facts showing a specific intent to monopolize, as required for a claim of attempted monopolization. *See, e.g.*, *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 180 (2d Cir. 1990). Under Rapaport's allegations, Professor Epstein cannot be said to have a "dangerous probability of achieving monopoly power," much less the Student Defendants. Any clerkships filled through Professor Epstein's recommendation come because judges *choose* to give weight to his recommendation. The Student Defendants have nothing to do with it, and that is fatal to Rapaport's monopoly claims.

**B.      Rapaport fails to allege anticompetitive conduct in the relevant market.**

Rapaport's monopoly claims also fail because the Complaint lacks plausible allegations of anticompetitive conduct in a relevant market. An antitrust plaintiff must define "the relevant market and examination of market power." *Spectrum Sports,* 506 U.S. at 455; *accord Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,* 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009) ("[I]n a case that requires proof of a relevant market, it is not enough to survive even a Rule 12(b)(6) motion to dismiss to make bald assertions as to its existence or definition."). And the plaintiff may not "[m]erely assert[] that a commodity is in some way unique" without "explain[ing] why the market [he] alleges is the relevant, economically significant product market." *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,* 909 F. Supp. 162, 171 (S.D.N.Y. 1995). Where, as here, a complaint's market theory lacks "rational or economic sense," "[a] motion to dismiss is appropriate." *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 576 (S.D.N.Y. 2011) (cleaned up).

Rapaport's own allegations undercut any contention that the supposed "racket" has monopolized or threatens to monopolize the "judicial clerkship market as flowing through the New

York University School of Law[.]" FAC ¶¶ 245, 250. Instead, there are many other paths to federal clerkships, and the Complaint does not allege that the only path to a clerkship at NYU Law is through Professor Epstein. Indeed, NYU Law students undoubtedly obtain federal clerkships beyond just those who receive a recommendation from Professor Epstein. As Rapaport alleges, NYU Law has "devised formal and informal policies" for creating a "controlled opposition" that will fill "detested conservative slots" in federal clerkships. FAC ¶¶ 194–95. Rapaport has not plausibly alleged that those clerkships are uniquely available through Professor Epstein, and he has not alleged that the other opportunities were unavailable to him. Nor has Rapaport accounted for the fact that his failure to apply for a clerkship was the primary, self-inflicted reason for not obtaining a clerkship.[7] And Rapaport similarly fails to allege the other basic elements of a traditional market, namely prices or market participants.

At most, Professor Epstein is a long-tenured legal professor who has provided many successful clerkship recommendations because of his reputation. Rapaport's allegations fail to allege anticompetitive conduct generally, and certainly with respect to the Student Defendants. *See In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019) (rejecting "impermissible group pleading").

If anything, Rapaport's Complaint confirms that the clerkship market is highly competitive, which undermines his monopoly claims as antitrust laws exist "for 'the protection of competition not competitors.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962)). But here, Rapaport merely

---

[7] This also calls into question whether Rapaport even has standing to bring any claim that is based on his failure to obtain a clerkship. The Supreme Court and the Second Circuit are both clear that self-inflicted injuries do not confer standing. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin*., 710 F.3d 71, 85 (2d Cir. 2013).

claims that he lost out on a clerkship he thought he deserved. That does not suffice for a monopoly claim, as Rapaport must "allege an injury beyond harm to an individual competitor." *Miller v. Nicholas*, No. 20-cv-5230(WFK)(SJB), 2021 WL 9037639, at *2 (E.D.N.Y. Nov. 3, 2021).

For these reasons, Rapaport's antitrust claims are plainly implausible, and they should be dismissed.

### C.    Rapaport fails to allege any antitrust injury.

Rapaport must also identify an injury caused by the alleged antitrust violations. *See, e.g.*, *Laboratories Majorelle SAS v. Apricus Bioscis., Inc.*, No. 17-cv-6625(AT), 2018 WL 11222863, at *4 (S.D.N.Y. Sept. 21, 2018). In this Circuit, courts apply a three-part test to determine whether a plaintiff has plausibly alleged an antitrust injury:

> First, the plaintiff must identify the practice complained of and the reasons the practice is or might be anticompetitive. Second, the court must identify the actual injury alleged by the plaintiff. Third, the court must compare the anticompetitive effect of the practice at issue to the actual injury alleged by the plaintiff.

*In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 220 (S.D.N.Y. 2019) (citing *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013)). It is not enough to allege that the injury is "causally linked" to the alleged anti-competitive actions. *Gatt*, 711 F.3d at 76 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mart, Inc.*, 429 U.S. 477, 489 (1977)). Instead, "[t]he antitrust injury requirement ensures that a plaintiff can recover *only* if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (first emphasis added).

Rapaport does not even attempt to allege facts satisfying these requirements. He instead largely focuses on his failure to obtain a clerkship, which he admits was due to his not applying for a clerkship. Elsewhere, Rapaport claims he was injured by not being able to perform certain "think tank work," because Defendant Epstein instead "completed the project with a research

assistant[.]" FAC ¶¶ 259–60, 263. And Rapaport claims that Defendants prevented him from "academic journal work." *Id.* ¶ 257. For all these alleged injuries, Rapaport fails to allege any facts connecting the alleged injury to anticompetitive actions, which is fatal to his antitrust claims.

### D.  Rapaport fails to allege any restraint on trade.

Rapaport also fails to allege that Defendants entered an agreement to restrain trade. The Complaint certainly does not allege "direct evidence (such as a recorded phone call or email in which competitors agreed to fix prices)," and the Complaint lacks any allegations of "circumstantial facts supporting the *inference* that a conspiracy existed" to enter an anticompetitive agreement. *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 101–02 (S.D.N.Y. 2021) (cleaned up). Instead, Rapaport's entire theory is that Defendants targeted him. FAC ¶ 24. But Rapaport fails to explain how that alleged personal vendetta resembles an agreement to restrain trade in a market. And under *Twombly*, "naked conclusion[s] that [Defendants] have 'agreed with each other' not to deal with Plaintiff" will not suffice. *RxUSA Wholesale, Inc. v. Alcon Lab'ys, Inc.*, 661 F. Supp. 2d 218, 231 (E.D.N.Y. 2009), *aff'd,* 391 F. App'x 59 (2d Cir. 2010).

Moreover, the Complaint does not allege any unreasonable restraint on trade. As noted earlier, Rapaport must allege an unreasonable restraint on trade "either per se or under the rule of reason." *Cap. Imaging*, 996 F.2d at 542. Under the "rule of reason," Rapaport must "show[] that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995) (cleaned up). The adverse effect on "competition" must be "market-wide." *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244 (2d Cir. 1997). The Complaint does not do so. Instead, for each of his unreasonable-restraint claims, Rapaport claims that Defendants prevented him from obtaining something (*e.g.*, a journal position, a position at a think tank, or a clerkship). FAC ¶¶ 257, 260, 265. Rapaport thus fails to allege any market-wide restraint;

he is simply complaining about his own alleged (and largely self-inflicted) misfortune.

Nor has Rapaport alleged facts showing a per se unreasonable restraint on trade. "Courts have found certain types of restraints of trade to be so inherently anticompetitive that they are per se invalid," like "price fixing, market divisions, tying arrangements and group boycotts[.]" *Metro. Intercollegiate Basketball Ass'n v. Nat'l Collegiate Athletic Ass'n*, 337 F. Supp. 2d 563, 570 (S.D.N.Y. 2004). This is not such a case, and Rapaport does not come close to alleging any facts suggesting a per se unreasonable restraint on trade.

## CONCLUSION

As a review of the Complaint confirms, Rapaport harbors great ill will toward Professor Epstein and the Student Defendants, and it appears those feelings stem from Rapaport's not getting job opportunities he thought should be handed to him. However, hurt feelings are no basis for levying harmful allegations against various former NYU Law students. The notion that Professor Epstein and the Student Defendants concocted and advanced a RICO enterprise aimed at preventing Rapaport from obtaining a job is implausible, to say the least. That is likely why Rapaport cannot allege facts showing an enterprise, causal injury, predicate acts, or a pattern of racketeering. Even less plausible is Rapaport's attempt to show that the Student Defendants captured the clerkship "market" at NYU Law—were that even a thing—and monopolized it to Rapaport's detriment.

For these various reasons, the Court should dismiss Rapaport's claims against Student Defendants for failing to state a claim.

Dated: July 15, 2025

Respectfully submitted,

*/s/ Brian J. Field*
Brian J. Field (admitted *pro hac vice*)
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
Email: bfield@schaerr-jaffe.com

*Counsel for Student Defendants*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify under penalty of perjury that the foregoing memorandum complies with the word limits of Local Civil Rule 7.1(c).  According to the word-processing system used to prepare the foregoing, the total word count for all qualifying portions of this memorandum is 8,267 words.

Dated: July 15, 2025
Washington, D.C.                                        */s/ Brian J. Field*_____