The Honorable Jessica G. L. Clarke
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

**Re:    Rapaport v. Epstein et al., 24-cv-07439**

**<u>Motion to Alter or Amend the Judgment per FRCP 59(e)</u>**

Your Honor:

I am respectfully writing to request that the Court reconsider its opinion in this case and move that the Court alter or amend the judgment entered on March 31, 2026 ECF No. 91 pursuant to the opinion published on that same date ECF No. 90, as provided for by FRCP 59(e). The judgment must be altered or amended to deny all motions to dismiss as to all claims or vacated entirely.

This FRCP 59(e) motion is brought to (1) correct clear legal error, (2) prevent manifest injustice, (3) admit newly obtained audiovisual evidence (4) harmonize with intervening changes in law. These issues are raised in the context of a series of topic headings below. Also attached to this motion is an audiovisual recording uploaded via a link graciously provided by the Court of proud public admissions by defendant Epstein as to his highly ambitious and equally successful racketeering enterprise which clearly contradict his later factual 'implausibility' contentions present in his motion to dismiss ECF No. 76, and a proposed Second Amended Complaint.

The plaintiff respectfully reminds the Court that the Epstein "Organized Law" racket has for a lengthy period of time engaged in a pattern of racketeering and antitrust violations with the goal of subverting the administration of justice in the United States with the motives of personal aggrandizement, profit and the achievement of ideological objectives, particularly by targeting the federal courts and their staffing of law clerks. This racket has involved wire fraud, extortion, forgery, retaliation, money laundering, witness suppression, witness tampering, threats to reputation over interstate wire, obstruction of justice and perjury in federal court to corruptly support by false affidavit an irredeemably-conflicted representation of certain sets of defendants by the same counsel (in addition to separately litigated common law torts brought under state law and other misdeeds).

Pleading Standards

The Court committed clear legal error by failing to "draw[] all reasonable inferences in the plaintiff's favor" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and instead drawing inferences against the *pro se* plaintiff which is precisely the opposite of what *Twombly*/*Iqbal* and Second Circuit precedent require. By construing ambiguities and gaps in the FAC against the plaintiff rather than in his favor, the Court inverted the fundamental pleading standard. *Twombly* and *Iqbal* demand of a complaint only 'plausibility on its face,' not 'probability' or 'detailed factual allegations.' *Twombly*, 550 U.S. 544, 556, 570 (2007); *Iqbal*, 556 U.S. at 678. The Court's demand for explicit 'tying' of every fact to each RICO predicate imposed a

heightened pleading standard that does not exist at this stage while the Court's choice to give credibility to some plausible interpretations of the facts alleged to displace other plausible interpretations that lead to the defendant's culpability amount to the procedurally improper and premature adjudication of pleaded facts as opposed to their acceptance.

Although the Court repeatedly recited correct elements of the general pleading standards, it did not faithfully or correctly apply them, thus violating *Twombly* and *Iqbal*[1], resulting in what amount to a conversion of the defendant's 12(b)(6) motions to dismiss into a bench trial on the pleadings, thereby also violating the right to trial by jury as properly invoked by the plaintiff on the face of the initial Complaint ECF No. 1. At the Rule 12(b)(6) stage, the Court was required to 'accept[] all factual allegations in the complaint as true,' *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), yet it repeatedly discounted or re-characterized the plaintiff's detailed, chronological factual allegations as "inartful" or insufficiently "tied" to each element.

Furthermore, the treatment of the allegations falls short not only of the ubiquitous *Twombly*/*Iqbal* but also of the particular standards adopted to protect *pro se* litigants, especially in this Circuit. Courts must "construe [pro se pleadings] to raise the strongest claims that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) see also *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (special solicitude requires "liberal construction of pleadings" throughout 12(b)(6) analysis).

In the RICO and antitrust contexts, the Court has also implicitly attached a pleading requirement that the plaintiff plead the injuries of others. This would rule out any single-victim claims contrary to well-settled law and these statute's remedial purpose, and contradicts the pleading rules which only require "a short and plain statement of the claim showing that **the pleader** is entitled to relief" FRCP 8(a)(2) (emphasis added). This is a particularly severe error in the *pro se* context, because *pro se* litigants are not entitled to litigate the claims of others as a matter of law and results in an extreme hardship placed on *pro se* litigants amounting to manifest injustice. As to antitrust specifically, it is unclear where the Court has found support for the contention that the plaintiff must supply an economic report proving at this stage of litigation that individuals are hired out of law school in a labor market for positions such as law clerks, legal researchers or attorneys, or what the Court would do with such an economic report.

The Court further committed clear legal error by failing to recognize Plaintiff's concrete loss of **actual employment** as cognizable injury under both RICO and the Sherman Act. The FAC expressly alleges that Plaintiff lost his actual, current JD-advantaged employment at the America Fund organization, as well as a position that had already been formally offered to him by the Manhattan Institute. *See* FAC ¶¶ 143, 177, 181, 258–263. At the Rule 12(b)(6) stage the Court was required to accept these well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor *Goldstein*. Instead, the Opinion characterized the harms as "mere expectations" or "speculative," ignoring that the actual loss of existing employment and the

---

1 These precedents are themselves dubious interpretations of the Federal Rules of Civil Procedure that are ripe for reconsideration by the Supreme Court, as they were novel and contentious *ab initio*, and have manifestly created a standard that the district courts struggle to evenly implement.

revocation of a formally offered position at the Manhattan Institute constitute clear injury to "business or property." *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 604–05 (2025) (lost employment and business opportunities are recoverable RICO injuries); *Paycom Billing Services, Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 291 (2d Cir. 2006) (exclusion from market and lost employment opportunities can constitute antitrust injury). This failure to accept the pleaded facts of actual employment loss is clear error of law and manifest injustice warranting Rule 59(e) relief, and creates the appearance that whether by simply ignoring or diminishing, the Court will never consider any injury suffered by the plaintiff.

RICO Elements

The Court committed clear legal error by concluding that there was no enterprise for the purposes of RICO. This is contradicted by the plainest reading of the pleadings (which included a helpful diagram) further made impossible by the spontaneous and unforced admissions of defendant Epstein, entered as an audiovisual exhibit to this motion. These admissions are particularly damning since they were not made from atop a milk crate in a public park or a state hospital, but rather atop the stage of a plenary session of the 2024 Federalist Society National Lawyers' Convention, which was hosted at the increasingly famous Washington Hilton and attended by thousands of attorneys, law students, judges and other professionals, and should be understood in that proper context. "The enterprise is an entity separate and apart from the pattern of activity in which it engages ... [T]here is no restriction upon the associations embraced by the definition: an enterprise includes any ... group of individuals associated in fact although not a legal entity ... The enterprise may be devoted to entirely legitimate ends or to totally corrupt objectives." *United States v. Turkette*, 452 U.S. 576 (1981); "As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938 (2009). Here the enterprise is clearly focused on controlling federal clerkship positions, in addition to other activities, and has been for many years even before the birth of the plaintiff (according to defendant Epstein).

The Court committed clear legal error by re-characterizing the plaintiff's allegations of injury to business or property as allegations of non-cognizable reputational injury. Reputational injuries are the subject of a related state tort-claim case, and were not claimed for here. Rather than being claimed for damages, reputational injury was one (of multiple) factual and causal nexuses through which the plaintiff's business and property were injured. This is directly supported by the holding of *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025); *Horn v. Medical Marijuana, Inc.*, 80 F.4th 130 (2d Cir. 2023), which is the last word on RICO from the Supreme Court and the Second Circuit respectively, in which the appellate opinion finding physical injuries (which are similarly not themselves claimable under RICO) that arose as a consequence of racketeering activity to nevertheless be capable of causing RICO cognizable injuries to business or property. It is very strange that the Court did not consider *Horn* in its analysis of this issue, which was heavily focused on injury and causation. "[T]he 'business or property' requirement operates with respect to the *kinds* of harm for which the plaintiff can recover, not the *cause* of the harm for which he seeks relief. For example, if the owner of a gas station is beaten in a robbery, he cannot recover for his pain and suffering. But if his injuries force him to shut his doors, he can recover for the loss of his business. In short, a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury." *Horn* at 6 (emphasis original). The Supreme Court also explicitly rejected conflation of RICO injury with common law tort injury as committed by this Court "Neither Medical Marijuana nor the principal dissent explains why the common law of torts supplies the entire universe of relevant rights. After all, §1964(c) also confers

a legal right: a protection against business or property harms that result from racketeering activity. Accordingly, if a defendant's racketeering activity causes such a harm, the defendant has "inva[ded]" the plaintiff's "legally protected interest"—in other words, has *injured* the plaintiff []. Restatement (Second) of Torts §7(1)" *Horn* at 7 n.4 (emphasis original).

In terms of the facts of one particular injury properly alleged, the Court factually confused (1) the Bradley Fellowship which had been awarded to the plaintiff for a specific sum in the ordinary course (but not paid out yet), that was clawed back by defendant Epstein in the context of the thoroughly described racketeering activity, with (2) a later irregular hush money payment that defendant Epstein offered from incidentally the same sets of financial accounts, which he effectively controls as a slush fund, and that the plaintiff refused. The plaintiff's injuries to business or property pertains (in part) to (1), and it would be scandalous for any court to conflate an academic grant in the former case with an irregular hush money payment in the latter case, which was refused by the plaintiff. A specifically awarded sum of money earned by the plaintiff is the clearest possible interest in property to the recipient, as widely acknowledged "accounts receivable", and is also a clear business interest part and parcel with the plaintiff's academic pursuits as a law student.

The Court committed clear legal error by ignoring this money-laundering supported racket's engagement in threats to reputation by interstate communication, which clearly satisfy the predicate act requirement as explained by the plaintiff in ECF No. 83 9-11 through the specified unlawful activity statutory link, in addition to many other properly alleged predicate acts. This is separate, and in addition to the Court's improper rejection of the plaintiff's properly pleaded allegations of money laundering to conceal the unpalatable and at least in some cases also foreign origins of funds used to further the commission of specified unlawful activities and RICO predicates.  The Court's one sentence dismissal of money laundering predicates at Opinion 21-22 is a clear error of law that ignores the pleadings and reasonable inferences to be drawn from the pleadings. Additional detail as to these predicates act is included in the proposed Second Amended Complaint.

The Court committed clear legal error by adopting an overly narrow construction of the wire-fraud predicate. Wire fraud does not require that the fraudulent scheme be directed at, or that the misrepresentations be made to, the plaintiff himself. It is sufficient that the defendants used interstate wires as part of a scheme to defraud any person including third parties of money or property or the right to control the same. See *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661 (2008) ("[T]here is no general common-law requirement that a plaintiff in a RICO action based on mail or wire fraud must show that he relied on the defendant's alleged misrepresentations. … A plaintiff can establish proximate cause even when the misrepresentations were made to a third party."); *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 265–66 (2d Cir. 2004). Here, the FAC alleges that defendants fabricated and disseminated via interstate wires (at Reddit and Top-Law-Schools.com) a forged "DO NOT ADMIT" image and false accusations of sexual harassment in order to deceive third-party decision-makers about Plaintiff's character and fitness, thereby interfering with those parties' right to control clerkship, journal, and professional opportunities. These acts plausibly constitute wire fraud even though the ultimate injury was suffered by Plaintiff. The Court should also note that initially, these forgeries and defamations were targeted at defendant Epstein himself, so as to affect his control over

the assets of this racket, including clerkship slots and fellowship/grant funds, and the Federalist Society, particularly the James Kent program.

Antitrust Elements

The Court committed clear legal error in dismissing Plaintiff's Sherman Act antitrust claims. The Opinion imposed an unduly stringent pleading requirement for relevant market definition that is not required at the Rule 12(b)(6) stage. See *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001) (market definition is a fact-intensive inquiry frequently inappropriate for resolution on a motion to dismiss; dismissal is proper only when the alleged market is facially unsustainable). The FAC, liberally construed, alleges a plausible submarket for right-of-center judicial clerkships, academic journal positions, and think-tank opportunities at NYU Law – a cognizable market for legal talent that the district court itself could readily understand without the need for economic reports or expert analysis at the pleading stage. *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016). Moreover, the Court erred by holding that Plaintiff suffered no antitrust injury. Antitrust injury exists where a plaintiff is entirely excluded from the relevant market despite serious, concrete efforts to compete precisely as the FAC alleges here. The plaintiff made repeated, documented attempts to enter the market (including Epstein's own offers of a clerkship package deal, journal position, and think-tank opportunities), only to be deliberately kept out through the alleged anti-competitive conduct. The Court also ignored the pleadings to the effect that other students were deterred from seeking positions due to the operation of this racket, or sought defendant Epstein's career support secretly so as to prevent career sabotage as this plaintiff suffered from the student defendants. See *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 539 (1983) (recognizing harm to competition where a plaintiff is excluded from the market); *Paycom Billing Services, Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 291 (2d Cir. 2006) (exclusion from market can constitute antitrust injury). The Court's narrow focus on Plaintiff's individual harm, rather than the pleaded competitive effects in this submarket, constitutes clear error of law and manifest injustice warranting Rule 59(e) relief.

Conclusion

In light of the clear legal error and other issues raised, the Court thus also created manifest injustice in decreeing *sua sponte* that any amendment to the pleadings would be futile. The plaintiff also respectfully reminds the Court that defendant Epstein willfully defaulted in this action to obtain an advantage, and only returned to file his motion to dismiss after the plaintiff's single amendment as of right was utilized in response to the other defendants, who had previously filed motions to dismiss.

In conclusion, the judgment must be altered or amended to deny all motions to dismiss as to all claims or vacated entirely. Correcting these errors is precisely the purpose of Rule 59(e): to prevent the unnecessary burden and expense of an appeal that would inevitably result in reversal of the current judgment for misapplication of controlling Supreme Court and Second Circuit precedent.

Thank you for considering my request in this matter.


      Respectfully submitted,

           /s/ Gideon Rapaport *pro se*
           GideonRapaportLaw@outlook.com
           (862) 213-0895
           #627 1078 Summit Avenue
           Jersey City, New Jersey, 07307